## WALTER E. WALL *v.* HERMAN FOCKE.

EXCEPTIONS FROM CIRCUIT COURT, FIRST CIRCUIT.

ARGUED JANUARY 2, 1913.                    DECIDED JANUARY 11, 1913.

ROBERTSON, C.J., PERRY AND DE BOLT, JJ.

TENANCY IN COMMON—*services of co-tenant—right to compensation.*

Tenants in common are not entitled to charge for services rendered in the sale of the common property, unless there has been a special agreement or a mutual understanding to that effect. The mutual understanding of the parties may be proved by the facts and circumstances of the case, and, though it may not be shown that any specific amount had been agreed upon as compensation, yet, if it clearly appears to the satisfaction of the court that compensation for the services to be rendered was to be made, the law will imply an obligation to pay a reasonable amount.

ID.—*implied agreement for compensation—evidence.*

The mere fact that a co-tenant is, with the knowledge of the other owners, making efforts to sell the common land and that the sale, if accomplished, will result to the benefit of all the other co-tenants is not sufficient to justify the inference that the more active co-tenant is making the efforts with the expectation of compensation from the others or the inference that the others knew or must have known that he had such expectation.

ID.—*obligation to compensate not implied by law.*

From the mere fact that a defendant had knowledge of his co-tenant's efforts to procure a purchase of the common land, that he acquiesced in those efforts, which proved successful, and that he was benefited by the sale, the law will not, without reference to the intention of the parties, imply an obligation on defendant's part to pay his co-tenant for the services so rendered.

### OPINION OF THE COURT BY PERRY, J.

This is an action of assumpsit for $2700, upon three counts. The plaintiff and the defendant were tenants in common of a tract of land known as Pilipili, 54 acres in area, the plaintiff having purchased his undivided one-half interest in June, 1903, and the defendant having acquired his interest before that date.

After unsuccessful efforts on the plaintiff's part to procure an amicable partition both parties were desirous of selling the common property to the best advantage. In the three counts of the declaration it is alleged that "plaintiff and defendant entered into an oral arrangement whereby it was mutually agreed that plaintiff should become the agent or broker of them both for the sale of said Pilipili tract and as such agent or broker should procure a purchaser or purchasers of said land, either as a whole or in such parcels or lots as plaintiff might in his discretion decide to be most advantageous to their mutual interests." It is also alleged that the plaintiff procured a sale of the land with the consent and approval of the defendant for the sum of $54,000. The first count is on an express promise alleged to have been made by the defendant to pay to the plaintiff for the latter's services in selling the land ten per cent. of all sums received by the defendant from sales of the defendant's interest in the land. The second is to the effect that by reason of the sale the plaintiff is entitled to compensation in a reasonable amount for his services and that $2700 is a reasonable amount. The third is upon an account stated in the sum of $2700. The defendant filed an answer of general denial and a counter-claim for $152.09 for balance of revenue from the land collected by the plaintiff and belonging to the defendant. Trial was had without a jury.

The trial court in its decision made no reference to the third count; there was no evidence in support of it. Lamenting the contradictory nature of the evidence and speaking of the case generally, the court said that it was of the opinion "that the plaintiff has failed to make out his case by that clear preponderance of the evidence which the burden of proof requires." Concerning the first count the court held that it was "from the evidence impossible for the court to say that there was a fair preponderance of evidence showing a contract to pay a ten per cent. commission on the sale of the land." Of the claim in the second count it said, *inter alia,* "There can be no question if a

person stands by and sees another acting in good faith working in his behalf and gives no intimation that he does not desire such labor done that the law will imply a promise on his part to pay the reasonable value of such labor.   Such it does not appear to the court are the facts in this case.   During the entire time that plaintiff was dealing with Desky the defendant was absent from the Territory.   The undisputed evidence is that the defendant's attorney in fact knew nothing of the transaction until the deal had been practically completed with Desky and the latter had agreed to enter into a contract, whatever it was, either of sale or to sell.   The plaintiff and defendant were co-owners of the land in question and whatever advantage the defendant obtained by the endeavors of the plaintiff the plaintiff obtained an equal advantage.   Under such circumstances it seems apparent that it cannot be said as a matter of law that the plaintiff was working for the defendant rather than himself or that the defendant stood by or encouraged him to work in his behalf.   It cannot be doubted that the labors of plaintiff did benefit the defendant, but it seems clear to the court that such benefit was incident to the benefit sought for himself and that therefore no case arises where in good conscience the defendant is bound to pay the plaintiff."   Judgment was thereupon ordered and entered for the defendant for the amount of the counter-claim.   Subsequently the plaintiff filed a motion for a new trial upon the grounds that the decision and judgment were "contrary to the law, to the evidence and to the weight of the evidence" and that the court erred "in finding that no contract for the sale of the property in question was entered into by plaintiff and defendant" and "in finding that said plaintiff was not entitled to account for his services under the *quantum meruit* count", and upon the further ground of errors alleged to have occurred in the admission and rejection of evidence. The motion was granted and a new trial ordered.

In its written opinion on the motion the court, after reciting that it had held "on the hearing of the case in chief that the

plaintiff had not shown by a preponderance of the evidence that defendant had entered into a contract with him to pay plaintiff for his services in selling a certain land held by them in common" and "that plaintiff was not entitled to judgment under his count for *quantum meruit*," said: "There can be no doubt that defendant did know that plaintiff was using effort and time in the sale of the common land, and that defendant acquiesced in such effort and expenditure of time. Nor can it be doubted that defendant was benefited by the sale of the land, nor that the sale was consummated by the efforts of Wall, the plaintiff, alone. Under such circumstances, I am of the opinion that the efforts of plaintiff were not in contemplation of joint or common tenancy, were without his duties as co-tenant of the defendant, and being acquiesced in by the defendant and the defendant having been benefited thereby, and that therefore the plaintiff is entitled to judgment on his count of *quantum meruit*." The case comes to this court on the defendant's exceptions.

The essence of the action is a claim by one person against his co-tenant for compensation for services rendered in effecting a sale of the land held in common. The law relating to compensation of a co-tenant for individual services rendered in the management and care of the common property is well settled. A clear statement of it is found in *Ranstead* v. *Ranstead,* 22 Atl. (Md.) 405, 406, as follows: "It is certainly a well established principle that joint or common owners are not entitled to charge for services rendered in the care and management of the common property, except where there has been a special agreement or a mutual understanding to that effect; and courts are not disposed to extend such agreements beyond their plain and reasonable import. * * * But the mutual understanding of the parties may be proved by the facts and circumstances of the case, and, though it may not be shown that any specific amount had been agreed upon as compensation, yet, if it clearly appears to the satisfaction of the court that com-

pensation for the services to be rendered was to be made and services to be rendered with reference to such understanding, the law will imply an obligation to pay a reasonable amount." "Each joint owner, in taking care of the joint property, is taking care of his own interest and the law never undertakes to measure and settle, between partners, their various and unequal services bestowed on the joint business. This must be left to be regulated by contract." *Franklin* v. *Robinson,* 1 Johns. Ch. 157, 164. "If an agreement that the partner shall be paid for his services can be fairly and justly implied from the course of business between the co-partners, he is entitled to recover. The question is one of evidence, or contract, and whether the right to recover is established by necessary implication or from express stipulation, the rule is the same." *Levi* v. *Karrick,* 13 Ia. 344, 350. To the same effect are: Freeman, Co-Tenancy and Partition, Sec. 260; 17 Am. & Eng. Ency. Law 688; 38 Cyc. 53, 54; *Gay* v. *Berkey,* 137 Mich. 658; *Cole* v. *Cole,* 108 N. Y. Supp. 124; *Lake* v. *Perry,* 54 So. (Miss.) 945. Upon principle the same rule applies when the services rendered consist of efforts to sell common property. Each owner in attempting to bring about an advantageous sale of the whole property is primarily taking care of his own interest and only incidentally benefiting his co-owner. Ordinarily a sale of the whole property will result more advantageously to each of the owners than will the sale of a mere undivided interest and for this reason a co-tenant may well endeavor to procure a purchaser of the whole with the hope that his co-owners will join in the sale. The law does not, in the absence of contract, undertake to measure between co-owners their various and unequal services bestowed on the business of selling their common land. The mere fact that a co-tenant is, with the knowledge of the other owners, making efforts to sell the common land and that the sale, if accomplished, will result to the benefit of all the other co-tenants is not sufficient to justify the inference that the more active co-tenant is making the

efforts with the expectation of compensation from the others or the inference that the others knew or must have known that he had such expectation.

In this connection it is well to bear in mind the distinction between express contracts, implied contracts and constructive contracts. The first are, as the term implies, those in which "the terms of the agreement are openly uttered and avowed at the time of the making." 2 Blackstone Com. 443. Constructive contracts are "fictions of law adapted to enforce legal duties by actions of contract where no proper contract exists, express or implied." *Hertzog* v. *Hertzog,* 29 Pa. St. 465, 468. In these the actual intention of the promisor is disregarded. "Implied contracts arise under circumstances which, according to the ordinary course of dealing and the common understanding of men, show a mutual intention to contract." (Ib. 468). "An implied contract, in the proper sense, is where the intention of the parties is not expressed, but an agreement in fact, creating an obligation, is implied or presumed from their acts, as in the case where a person performs services for another, who accepts the same, the services not being performed under such circumstances as to show that they were intended to be gratuitous, or where a person performs services for another on request." 9 Cyc. 242. "There is some looseness of thought in supposing that reason and justice ever dictate any contracts between parties or impose such upon them. All true contracts grow out of the intentions of the parties to transactions and are dictated only by their mutual and accordant wills. When this intention is expressed we call the contract an express one, when it is not expressed it may be inferred, implied or presumed from circumstances as really existing and then the contract thus ascertained is called an implied one. * * * The law ordinarily presumes or implies a contract whenever this is necessary to account for other relations found to have existed between the parties. * * * A party who relies upon a contract must prove its existence; and this he does not do by merely proving a

set of circumstances that can be accounted for by another rela-
tion appearing or existing between the parties. * * * Every
induction, inference, implication or presumption in reasoning
of any kind is a radical conclusion derived from and demanded
by certain data or ascertained circumstances.   If such circum-
stances demand the conclusion of a contract to account for them
a contract is proved; if not, not." *Hertzog* v. *Hertzog,* supra.
In general there must be evidence that defendant requested
plaintiff to render the services or assented to receiving their
benefit under circumstances negativing any presumption that
they would be gratuitous.   The evidence usually consists in,
first, an express request pertaining to the services, or second,
circumstances justifying the inference that plaintiff, in render-
ing the services expected to be paid, and defendants supposed
or had reason to suppose and ought to have supposed that he
was expecting pay, and still allowed him to go on in the service
without doing anything to disabuse him of this expectation; or
third, proof of benefit received, not on an agreement that it was
gratuitous and followed by an express promise to pay." *Rail-
way Company* v. *Gaffney,* 65 Oh. St. 104, 116.

In his first opinion the trial judge found, and there was
ample evidence to support the findings, not only against the
claim of an express contract for a commission of ten per cent.
but also against the claim of an understanding or expectation
on the part of both parties that plaintiff would be compensated
by defendant in an amount not agreed upon.   His findings of
fact and his reasoning, above quoted, under the second count,
admit of no other interpretation.   His conclusion was in effect
that the facts disclosed by the evidence were not such as to jus-
tify the implication of a contract or mutual understanding or
expectation that the plaintiff was to receive compensation from
defendant.   It may be that in the later decision the statement
that "there can be no doubt that the defendant did know that
plaintiff was using effort and time in the sale of the common
land and that the defendant acquiesced in such effort and ex-

penditure of time" and that "defendant was benefited by the sale of the land" and that "the sale was secured by the efforts of Wall, the plaintiff, alone" was intended or operates as a modification to that extent of the findings in the earlier opinion. Assuming, but not deciding, that that is so and that the court had the power under the circumstances to alter its findings of fact to that extent, it is clear that the original findings were not altered in any other respect and that in the later opinion all that the court intended to hold was that upon the facts, and those only, stated in the second opinion the plaintiff was, as a matter of law, entitled to compensation.   But the four facts relied upon by the trial court, namely, that defendant had knowledge of plaintiff's efforts, that he acquiesced in those efforts, that he was benefited by the sale and that the sale was consummated by the plaintiff alone, are not, under the law above stated, of themselves sufficient to give rise to an obligation on the defendant's part to pay and since the findings that there was no express contract and that no circumstances existed from which a mutual understanding or expectation should be presumed remain unreversed by the trial court the exceptions are sustained and the order granting a new trial is set aside.

W. B. Lymer (Thompson, Wilder, Watson & Lymer on the brief) for plaintiff.

I. M. Stainback (Holmes, Stanley & Olson on the brief) for defendant.