100 P.3d 60

**Ronald L. DURETTE, Plaintiff–Appellant,**

**v.**

**ALOHA PLASTIC RECYCLING, INC., a Hawai'i Corporation, Defendant–Appellee,**

**Richard Doran, Harold Haroun, and Thomas Reed, Defendants.**

No. 23854.

Supreme Court of Hawai'i.

Oct. 29, 2004.

As Corrected Nov. 1, 2004.

Lloyd A. Poelman and Sanford J. Langa, Wailuku, of Poelman & Langa, on the briefs, for plaintiff-appellant Ronald L. Durette.

Paul Yamamura, Lila Barbara Kanae, and Wesley D. Shimazu, Honolulu, of Kanae & Yamamura, on the briefs, for defendant-appellee Aloha Plastic Recycling, Inc.

MOON, C.J., LEVINSON, NAKAYAMA, ACOBA, and DUFFY, JJ.

Opinion of the Court by LEVINSON, J.

The plaintiff-appellant Ronald L. Durette appeals (1) the order, filed on October 8, 1998, of the circuit court of the second circuit, the Honorable Boyd P. Mossman presiding, granting defendant-appellant Aloha Plastic Recycling, Inc.'s [hereinafter, "APR"] motion for summary judgment as to Durette's claim of unjust enrichment. Durette also appeals the following order and judgment of the circuit court of the second circuit, the Honorable Joseph E. Cardoza presiding: (2) the order, filed on April 24, 2000, denying Durette's (a) motion for reconsideration of the October 8, 1998 order granting summary judgment, (b) motion for reconsideration of Durette's oral motion made at trial to amend his complaint to include his unjust enrichment claim, and (c) motion to make additional findings of fact (FOFs) under Hawai'i Rules of Civil Procedure Rule (HRCP) 52(b) (2004) [1] and to enter judgment under HRCP Rule 59 (2004) [2] regarding his unjust enrichment claim and unpaid wages claim, [hereinafter, "motions for reconsideration"]; [3] and (3) the first amended judgment, filed on October 4, 2000.

On appeal, Durette contends, *inter alia*, that "it was error as a matter of law for the

1. HRCP Rule 52(b) provides:

    *Amendment.* Upon motion of a party made not later than 10 days after entry of judgment the court may amend its findings or make additional findings and may amend the judgment accordingly. The motion may be made with a motion for a new trial pursuant to Rule 59. When findings of fact are made in actions tried by the court without a jury, the question of sufficiency of the evidence to support the findings may thereafter be raised whether or not the party raising the question has made in the circuit court an objection to such findings or has made a motion to amend them or a motion for judgment.

2. HRCP Rule 59 provides:

    **New trials; amendment of judgments.**
    (a) *Grounds.* A new trial may be granted to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the State; and (2) in an action tried without a jury, for any of the reasons for which rehearings have heretofore been granted in suits in equity in the courts of the State. On a motion for a new trial in an action tried without a jury, the court may open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new findings and conclusions, and direct the entry of a new judgment.

    (b) *Time for Motion.* A motion for a new trial shall be filed no later than 10 days after entry of the judgment.

    (c) *Time for Serving Affidavits.* When a motion for new trial is based on affidavits, they shall be filed with the motion. The opposing party has 10 days after service to file opposing affidavits, but that period may be extended for up to 20 days, either by the court for good cause or by the parties' written stipulation. The court may permit reply affidavits.

    (d) *On court's initiative; notice; specifying grounds.* No later than 10 days after entry of judgment the court, on its own, may order a new trial for any reason that would justify granting one on a party's motion. After giving the parties notice and an opportunity to be heard, the court may grant a timely motion for a new trial, for a reason not stated in the motion. When granting a new trial on its own initiative or for a reason not stated in a motion, the court shall specify the grounds in its order.

    (e) *Motion to Alter or Amend Judgment.* Any motion to alter or amend a judgment shall be filed no later than 10 days after entry of the judgment.

3. It is noteworthy that Durette's motion to make additional FOFs under HRCP 52(b) and to enter judgment under HRCP Rule 59 regarding his unjust enrichment claim and unpaid wages claim did not include his implied contract claim, which failed at trial and is not at issue in the present appeal.

circuit court to dismiss [his] unjust enrichment claim via summary judgment[.]"

In response, APR argues, *inter alia*, as follows: (1) "[b]ased on [Durette's] non-compliance with [Hawaiʻi Rules of Appellate Procedure (HRAP)] Rule 28(b)(4) [(2004) [4]], [Durette's] points of error should be disregarded"; (2) "the trial court properly dismissed [Durette's] unjust enrichment claim because [Durette] received all that he was entitled to receive under the parties' existing agreement[,]" and (a) "there was no unjust enrichment because [APR] did not receive any unjust benefits[,]" (b) "there was no implied contract since there was no mutual assent on essential terms[,]" (c) "[Durette] was paid the full amount that he was promised under the existing agreement[,]" and (d) "the trial court's ruling was supported by the [FOFs] and should not be overturned[ ]"; and (3) "the trial court's rulings should be affirmed."

Durette replies, *inter alia*, (1) that "APR's understanding of HRAP Rule 28(b)(4) as applied to the points of error urged in [Durette's] appeal is misguided and should be summarily rejected[,]" (2) that "[t]he critical standard of review for this appeal is that the trial court erred as a matter of law when it granted APR's [m]otion for [s]ummary [j]udgment in regard to Durette's unjust enrichment claim[,]" and (3) that the facts, viewed "in the light most favorable to Durette" and "[a]ppl[ied] ... to the law of unjust enrichment, [indicates that] the trial court erred as a matter of law when it granted APR's motion for summary judgment[.]"

For the reasons discussed *infra* in Section III, we hold that there is a genuine issue of material fact as to whether the retention of the benefit of Durette's services by APR was "unjust," such that the circuit court erred in granting summary judgment in favor of APR and entering the October 4, 2000 first amended judgment. In light of our holding, we need not reach Durette's challenge to the April 24, 2000 order denying Durette's motions for reconsideration. Accordingly, we (1) vacate the circuit court's (a) October 8, 1998 order granting APR's motion for summary judgment and (b) October 4, 2000 first amended judgment and (2) remand this matter to the circuit court for further proceedings consistent with this opinion.

## I. BACKGROUND

On June 27, 1997, Durette filed a complaint in the circuit court of the second circuit, alleging the following counts against APR, as well as the defendants Richard Doran, Harold Haroun, and Thomas Reed [collectively hereinafter, "the Defendants"]:[5] (1) fraud (Count I); (2) breach of implied contract (Count II); (3) unjust enrichment (Count III); and (4) unpaid wages (Count IV). Durette prayed

---

**4.** HRAP Rule 28(b)(4) provides in relevant part:

 (b) *Opening Brief:* Within 40 days after the filing of the record on appeal, the appellant shall file an opening brief, containing the following sections in the order here indicated:

 ....

 (4) A concise statement of the points of error set forth in separately numbered paragraphs. Each point shall state: (i) the alleged error committed by the court or agency; (ii) where in the record the alleged error occurred; and (iii) where in the record the alleged error was objected to or the manner in which the alleged error was brought to the attention of the court or agency. Where applicable, each point shall also include the following:

 (A) when the point involves the admission or rejection of evidence, a quotation of the grounds urged for the objection and the full substance of the evidence admitted or rejected;

 (B) when the point involves a jury instruction, a quotation of the instruction, given, refused, or modified, together with the objection urged at the trial;

 (C) when the point involves a finding or conclusion of the court or agency, a quotation of the finding or conclusion urged as error;

 (D) when the point involves a ruling upon the report of a master, a quotation of the objection to the report.

 Points not presented in accordance with this section will be disregarded, except that the appellate court, at its option, may notice a plain error not presented. Lengthy parts of the transcripts that are material to the points presented may be included in the appendix instead of being quoted in the point.

**5.** At the time Durette's claims accrued and when Durette filed the complaint, Doran was the President and a Director of APR, Haroun was the Vice President and a Director of APR, and Reed was Secretary/Treasurer and a Director of APR. Doran, Haroun, and Reed are not parties to the present appeal. *See infra.*

that judgment ... be entered as to Count I against [the D]efendants and/or any of them, jointly and severally; that judgment be entered as to Count II[ ] and Count III against [APR] individually; and that judgment be entered as to Count IV against [APR] individually including civil remedies as provided by [HRS] Chapter 388; also as to all counts for damages to which [Durette] maybe entitled pursuant to proof adduced at trial, as well as cost of suit, attorney's fees, pre- and post-judgment interest, together with such other and further relief as to which [Durette] may be entitled pursuant to [HRCP] Rule 54[.]

On April 2, 1998, Durette and Haroun stipulated to the dismissal with prejudice of Durette's complaint against Haroun. On September 1, 1998, APR filed a motion for summary judgment as to all of Durette's claims, as well as a memorandum in support of the motion. In the memorandum, APR maintained, *inter alia*, as follows:

Absent [Durette's] single allegation that '[APR] has been unjustly enriched to the detriment of [Durette], [he] has presented no evidence that such ... unjust enrichment occurred.

The Supreme Court of Hawai'i has stated the following:

While unjust enrichment is a broad and precise term defying definition, the Supreme Court in deciding whether there should be restitution is guided by the underlying conception of restitution, that is, the prevention of injustice.

*Small v. Badenhop,* 67 Haw. 626, 701 P.2d 647 (1985).

In the instant case, there has been no showing of injustice. [Durette] admits that he was fully compensated for all the services he provided [APR] and for expenses.... Additionally, [Durette] did not have any knowledge of the amount of profits, if any, [APR] made while [Durette] was employed as an independent contractor, and has not presented any evidence that [APR] was unjustly enriched to his detriment.... In fact, [APR] did not post a profit while [Durette] was providing his consultant services in 1994–1996.... Additionally, [Durette] does not even know if

... Doran or Reed ... drew salaries as of May 1996.... [Durette] was the only person involved with [APR] who was fully compensated for his services and expenses. There has been no showing of any injustice. Accordingly, the doctrine of unjust enrichment is not applicable in the instant case.

On September 2, 1998 Doran and Reed jointly filed a motion of summary judgment and a memorandum in support of the motion.

On September 16, 1998, Durette filed a memorandum in opposition to APR's September 1, 1998 motion for summary judgment and Doran and Reed's September 2, 1998 motion for summary judgment. Durette advanced, *inter alia*, the following contentions as to his unjust enrichment claim:

"The basis of recovery on *quantum meruit* is that a party has received a benefit from another which it is unjust for him to retain without paying therefor." *Maui Aggregates, Inc. Vs. Reeder,* 446 P.2d 174 at 176, 50 Haw. 608 (1968)....

[Durette's] unjust enrichment claim is that the services he performed for ... [APR] were worth more than the token amount paid. [The] Defendants agreed with [Durette] that this was true up until the day that [Durette] quit.

... APR has presented no evidence and has not even suggested that the token amount paid [to Durette] was the fair value. APR wants to take a windfall from [Durette] and not pay him the fair amount for his services. APR's own representations to [Durette] in April 1996 were that [Durette's] services were worth $45,000.00 per year. The value of [Durette's] services is a question of fact for trial.

APR's unjust enrichment argument includes again the claim that "[Durette] admits that he was fully compensated for all the services he provided [APR] and for expenses[.]" ...

[APR] wants to exploit one statement made by [Durette] in his deposition, taken out of context of the sentence asked, and ignore [Durette's] complaint, the remainder of [Durette's] deposition and the Affidavit of Ronald L. Durette attached here-

to . . . . The legal standard on a motion for summary judgment is that the inferences to be drawn from the underlying facts alleged in the materials . . . considered by the court in making its determination on a motion for summary judgment must be viewed in the light most favorable to the party opposing the motion . . . .

. . . APR's final unjust enrichment argument is so creative that there is no case law or logic to back it up. APR claims that because it hasn't made a profit, it wasn't unjustly enriched by not paying [Durette]. The logical[ly] absurd [implication] of APR's argument is that any employer who does not make a profit does not have to pay its employees.

Durette also attached, *inter alia,* an "Affidavit of Ronald L. Durette" to his memorandum in opposition, which averred in relevant part:

3. In August of 1994, . . . APR and I entered into an oral employment agreement.

4. From August of 1994 until January 1995, a period of six months, I worked for . . . APR on a part time basis as a sales and marketing executive.

5. From February of 1995 until October 21, 1995, a period of twenty-one months, I worked for . . . APR on a full time basis as a sales and marketing executive.

6. October 31, 1996 was the last day that I worked for . . . APR.

7. During my employment, . . . APR gave me reimbursement for my expenses.

8. During the period of my employment, I was only partially paid for the services I performed in the amount of $19,650.00.

9. Throughout the period of my employment I was told by [Doran] and [Reed] that APR owed me more and would pay me more than the $125 per week and later $225 per week token compensation that I was paid for my past, ongoing, and future services.

10. Throughout the period of my employment [the] Defendants misrepresen-

ted to me that I was owed more and that . . . APR would fairly and fully compensate me for my services.

11. Throughout the period of my employment, at various staff meetings of . . . APR attended by myself and [Doran] and [Reed], I was told by [Doran] and [Reed] that . . . APR owed me more compensation and that [the] Defendants would negotiate with me and pay a fair and reasonable compensation to me for my past and future services beyond the token amount that I had been paid.

12. I categorically dispute the claim of the Defendants in this action that I was not told by [the] Defendants that I was owed more compensation for my services than the token amount that I had been paid.

13. I categorically dispute the claim of the Defendants in this action that I am not owed more compensation than the token amount that I was paid for services that I performed.

14. I was never told and never agreed during the course of my employment that all I would be paid as full compensation was the reimbursement of my expenses and the token amount that I was paid as of October 31, 1996.

15. The first time that [the] Defendants ever told me that they were not willingly going to . . . pay me any more than the token amounts that I had been paid was after I quit; up until that time, the words and actions of [the] Defendants continually led me to believe that I was owed more compensation and that I would be paid more compensation for my services, and that it was just a matter of the parties deciding what the amount of fair compensation should be.

16. [The] Defendants breached an implied employment contract with me when they refused to pay me for my services more than the token amount that I was paid.

17. During the period of my employment, in informal conversations between [Doran] and me, [Doran] told me that

... APR owed me more compensation and would pay me a fair and reasonable compensation for my past and future services beyond the token amount that had been paid.

18. On March 11, 1996, I sent to [Doran] ... a letter requesting a written contract that would "clearly identify all understanding relative to my indemnification: Stock, stock options, stipends, salary, bonus incentives, salary (delayed, future retroactive)."

19. A true and correct copy of the March 11, 1996 letter from me to [Doran] ... is attached....

20. In April 1996 ... APR gave to me a written compensation proposal for past and future services.

21. A true and correct copy of the April 1996 compensation proposal is attached....

22. The April 1996 proposal corroborated the representations that were made to me by [the] Defendants.

23. [The] Defendants in the April 1996 writing represented to me that ... APR acknowledged that "Ronald Durette has played a major role in establishing [APR] as the recognized supplier of recycled plastic products in Hawai'i during his year and a half association with the company."

24. [The] Defendants in the April 1996 writing proposed that APR compensate me $45,000 per year as full time salary for past and future work and one-half of full time salary for the first six months that I worked, less the amount that I had already been paid.

25. [The] Defendants in the April 1996 writing proposed to me that I, at my option[,] would either be compensated with stock in the company or with cash no later than April 1997.

26. When I was given the April 1996 writing by [Doran] and [Reed], [Reed] told me, "We should have done this two years ago," and [Doran] agreed.

27. [Doran] and [Reed] were aware of the contents of the April 1996 writing that was given to me and they led me to believe that the contents were true by their words and actions.

28. [The] Defendants implied in the April 1997 proposal that I was owed more for past services.

29. [The] Defendants implied in the April 1997 proposal that I was owed at a minimum the compensation that was proposed.

30. [The] Defendants knew at the time that the representations regarding compensation were made to me, including the April 1996 writing, that the representations were false—[the] Defendants in fact did not believe that I was owed any more compensation than I had already been paid for my services and [the] Defendants never intended to compensate me any additional amount more for my services than the token amount that I was paid.

31. [The] Defendants only told me that I was owed more compensation as a deception to induce me to continue to work for APR.

32. [The] Defendants now claim that I have been fully compensated for my services.

33. From April 1996 until October 31, 1996[,] [Doran] (and until approximately August 1996[,] [Reed] ) continued to fraudulently negotiate with me, leading me to believe that the April 1996 proposal was the minimum that I was owed for past and future services.

34. I relied on the fraudulent representations and writings made by [the] Defendants as though they were true.

35. I acted in reliance upon the fraudulent representations and writings made by [the] Defendants and[,] because of the fraudulent representations that I was owed more money[,] I performed services for ... APR.

36. I have been damaged by my reliance on the fraudulent representations of [the] Defendants in that I performed services for ... APR that I would not otherwise have performed.

37. When I said at my deposition in this matter at page 145, lines 23 and 24[,] that "[e]verything was paid in full, including expenses on the 30th of October '96[,]" I was referring only to the expenses and the token monthly payments that I was paid. It did not include the additional undetermined amounts that I was still owed. To claim that I agreed that I was paid in full is incorrect. I never agreed and do not agree that I have been paid in full. The question that I was asked was: "[w]hen you left [APR], they had paid you your monthly payments and all of your expenses, I believe; am I correct?" and that is the question that I answered with my statement.

On September 21, 1998, APR filed a reply memorandum in support of its September 1, 1998 motion for summary judgment, asserting in relevant part as follows:

... [Durette] agreed to provide services to [APR] as an independent contractor at a rate of $125 per week, which then later increased to $225 per week, as [Durette] requested.... [Durette] also admitted to being fully compensated for all services and expenses....

With regard to the proposals which [Durette] claims he relied upon, [Durette] admitted not signing, and instead submitting a counter-proposal.... [B]asic contract law states that a counter-offer effectively serves as a rejection of the original offer. See *Farnsworth on Contract* [;] *[s]ee also, Honolulu Rapid Transit Co. v. Paschoal,* 51 Haw. 19, 449 P.2d 123 (1968).

As the proposals were rejected by [Durette], he cannot now assert the position that he relied on proposals which he rejected.

[Durette] attempts to state that there was an implied contract by which he is entitled to receive compensation over and above the weekly compensation he requested and was paid in full. ... [Durette] rejected any other agreement for compensation presented by [APR], and is therefore precluded from receiving any more compensation. ...

[Durette] states that his statements regarding the only contract as being the weekly fee requested are taken out of context. [Durette's] direct statements made during his deposition testimony were just that, direct statements regarding facts of the instant case. [Durette] attempts to rehabilitate his deposition testimony by his assertion that certain statements were taken out of context. This is simply not true.

[Durette's] unjust enrichment argument simply states that he is entitled to the services rendered which benefitted another.... [Durette] admitted that he was fully compensated for the services he provided expenses incurred....

. . . .

By [Durette's] own admissions, he was employed as an independent contractor and was fully compensated for his services and expenses. [Durette] rejected all proposals for compensation presented to him, thereby negating any attempt at agreeing to an employment contract....

On September 24, 1998, the circuit court, the Honorable Boyd P. Mossman presiding, conducted a hearing on APR's September 1, 1998 and Doran and Reed's September 2, 1998 motions for summary judgment. On October 8, 1998, the circuit court filed an order granting APR's September 1, 1998 motion for summary judgment "as to Count I of [Durette's] Complaint regarding allegations of fraud; and Count III of [Durette's] Complaint regarding allegations of unjust enrichment...." On October 14, 1998, the circuit court entered an order regarding Doran's and Reed's September 2, 1998 motion for summary judgment, granting their motion and ordering that "all the claims against them in the [c]omplaint [be] dismissed."

The remaining counts (*i.e.*, breach of implied contract (Count II) and unpaid wages (Count IV)) were tried without a jury before the Honorable Joseph E. Cardoza from August 31, 1999 through September 2, 1999. Notwithstanding the October 8, 1998 order granting APR's September 1, 1998 motion for summary judgment, which dismissed Durette's unjust enrichment claim, Durette successfully introduced evidence relating to the

unjust enrichment claim over APR's objections throughout the course of the trial.[6]

On September 1, 1999, although the circuit court had only received the controverted testimony for its relevance to Durette's implied contract claim, *see supra* note 6, Durette orally moved to amend his pleadings to reinstate his unjust enrichment claim. Following argument by both parties, the circuit court orally ruled as follows:

> THE COURT: ... The ... Court [is] concern[ed] ... that essentially [Durette's Counsel] ask[s] the Court to use [HRCP] Rule 15 to ... reconsider [the October 8, 1998 order granting summary judgment] or reverse the ... earlier decision of Judge Mossman in this particular case, and [the] Court's not inclined to do that.
>
> So the Court is going to deny [Durette's Counsel's] request.

6. In his opening brief, Durette claims that, "[a]t the time of trial, evidence supporting a claim for unjust enrichment without objection from APR was presented." As APR notes, however, Durette's assertion is blatantly false. Indeed, APR raised several objections to Durette's introduction of evidence as to his unjust enrichment claim, beginning with Durette's first witness (*i.e.*, Grace Crozier, former Administrative Assistant at APR) and continuing, by way of a standing objection, throughout the course of the trial. The circuit court allowed the evidence in only as it pertained to Durette's implied contract claim:

> [APR'S COUNSEL:] Excuse me, your Honor, to the extent that the claim for unjust enrichment has been dismissed by summary judgment, and to the extent that there was no claim for *quantum mer[u]it*, I would like an offer of proof as to what the witness will testify to.
> ....
> [DURETTE'S COUNSEL:] Your Honor, this witness is going to testify, like I said she's somewhat out of order, in the event that there's going to be a defense that Mr. Durette wasn't performing work for [APR] and doesn't have a right to claim under implied contract, that she would testify that she was on the premises. She was familiar with him working there, and that he was working there.
> [APR'S COUNSEL:] Your Honor, that sounds like it's reaching to the evidence rule to the effect a claim of *quantum mer[u]it* and it doesn't exist in this case and we would object to the testimony.
> THE COURT: The Court will allow the testimony. You may proceed.
> [APR'S COUNSEL:] I'm sorry to interrupt. So the record is clear, we objected to all the

At the conclusion of the evidence, the circuit court requested proposed FOFs and COLs from the parties, and Durette inquired as to the propriety of including FOFs regarding the dismissed unjust enrichment claim, to which APR objected:

> [DURETTE'S COUNSEL:] ... [Y]our Honor, ... would it be appropriate if I put in the findings regarding what could have been found regarding an unjust enrichment claim for appeal purposes?
>
> [APR'S COUNSEL:] I would object to that.
>
> THE COURT: ... [T]hat wasn't before the Court, ... that wasn't part of this case.
>
> [DURETTE'S COUNSEL:] They won't go there.
>
> THE COURT: Yeah, there was a ruling on that, and so that's not before this court. You can try.

> witnesses based on the prior objections about the *quantum mer[u]it*, lack of claim; *lack of unjust enrichment*. I don't want to interrupt the testimony any more, but *we have a standing objection on that, just as a standing objection.*
> THE COURT: *Yes, that standing objection is so noted.*
> [APR'S COUNSEL:] Thank you.

(Emphases added.) APR also specifically objected to the testimony, relating to unjust enrichment, of Durette's expert witness, Jorge Hansen, who was employed to determine a wage valuation of Durette:

> [APR'S COUNSEL:] And is it your opinion that these amounts in the three categories you have listed [in your wage valuation reports] ... would have been fair compensation for [Durette] during that period of time that he was with [APR]?
> [HANSEN:] Yes.
> [APR'S COUNSEL:] Thank you.
> On that basis, your Honor, we move to object to this coming into evidence. He's clearly laying the evidence and the testimony for the *quantum mer[u]it* count that has already been dismissed by Judge Mossman. This had nothing to do with breach of contract for prospective employment.
> This is saying had he stayed, or during the time he was with [APR,] this was fair compensation for his services and that is not part of this case any more. So we'd ask that this not be allowed into evidence.

The circuit court nevertheless allowed the wage valuation reports to be received into evidence after Durette's counsel asserted that they were "relevant to the case as part of the breach of the implied contract [claim], which [was] still before the [circuit] [c]ourt."

Although APR submitted proposed FOFs, COLs, and a proposed order on September 17, 1999, the record on appeal does not reflect that Durette filed proposed FOFs and COLs prior to the circuit court's entry of FOFs and COLs.

On December 2, 2000, the circuit court entered the following FOFs, COLs, and order, which are unchallenged on appeal: [7]

## FINDINGS OF FACT

1. [APR] is a Hawaii corporation founded in 1993 and located in the County of Maui.

2. [Durette] began working for [APR] in August 1994 as an independent contractor on a part-time basis to handle sales and marketing. [Durette] was compensated for the work he performed at the rate of $125.00 per week and was reimbursed for his expenses. Said compensation was the amount requested by [Durette].

3. In February 1995, [Durette's] compensation was increased to $225.00 per week, plus expenses. Said amount was the amount requested by [Durette].

4. In December 1995, [Durette] received[,] by way of additional compensation, 4,000 shares of stock of [APR].

5. [Durette] and [APR] agreed that a comprehensive compensation contract would be negotiated at a future date and that said contract would be arrived at by mutual agreement. They agreed that such a contract would provide, at least, ... 1) [that Durette] would receive more compensation than the amount he agreed to initially; 2) [that Durette] would be a full-time employee of [APR]; and 3) [that Durette] would continue his employment with [APR] into the future.

6. [Durette] and [APR] did not reach a meeting of the minds and agree that [Durette] would receive additional compensation for his past employment absent their reaching an agreement on a comprehensive compensation contract for full-time future employment.

7. The comprehensive compensation contract contemplated by [Durette] and [APR] was to be arrived at by mutual agreement. [Durette] and [APR] were not required by their agreement to accept any offer made by the other party.

8. While employed by [APR], [Durette] also maintained employment as a jewelry salesman with Richters of Hawaii, a retail jewelry company. [Durette's] compensation from Richters was based upon commissions. During the time he was employed by both [APR] and Richters, [Durette's] compensation from Richters was considerably more than his compensation from [APR], as much as twice the amount of compensation paid by [APR].

9. At all times during [Durette's] employment with [APR], said corporation did not make a profit and instead incurred significant losses.

10. On March 11, 1996, by way of letter to [APR's] President, [Durette] initiated the negotiation for a comprehensive compensation contract.

11. In April 1996, [APR] presented a written "Compensation Proposal" to [Durette] which provided an annual wage of $45,000.00 based upon a full-time position and established a credit of $41,250.00 for past work, which amount [Durette] could draw upon when company cash flow permitted or which could, at [Durette's] option, be converted to [APR's] stock. This proposal was a fair and bona fide offer which [Durette] was free to accept or reject. [Durette] rejected this offer.

12. On June 27, 1996, [Durette] presented to [APR] a written counter proposal entitled "Agreement for Compensation" which, among other provisions, provided for an annual compensation of $60,000.00 and payment of an additional sum of $73,825.00 as past wages, said sum to be liquidated by an initial payment of $25,000.00 and the balance to be paid

---

**7.** Inasmuch as the circuit court's FOFs, COLs, and order pertain only to Durette's implied contract claim, which went to trial, we do not rely upon the FOFs in our analysis, *infra* in section III, of the correctness of the circuit court's earlier grant of summary judgment in APR's favor and against Durette as to Durette's unjust enrichment claim.

monthly. This proposal was a fair and bona fide offer which [APR] was free to accept or reject. [APR] rejected this offer.

13. On September 16, 1996, by way of a letter to [APR's] President, [Durette] requested a response to his counter proposal and advised [APR] that Richters of Hawaii had offered him a full-time position which he had "tentatively accepted in lieu of any offer" from [APR].

14. On October 5, 1996, [APR] made an oral counter proposal offering [Durette] the position of Vice–President, a seat on the Board of Directors, a salary of $36,000.00 per annum, and 10% of [APR's] pre-tax profits. Unlike the prior offer and counter offer, this counter offer contained no provision for back pay or credit for prior services rendered by [Durette]. This counter offer was a fair and bona fide offer which [Durette] was free to accept or reject. [Durette] rejected this offer.

15. The offers made by [APR] and [Durette] were comprehensive compensation contracts within the meaning of the agreement between [Durette] and [APR].

16. On October 31, 1996, [Durette] terminated his employment with [APR] and terminated the negotiations between the parties by accepting a full-time position with Richters of Hawaii, in which position [Durette] is currently earning in excess of $50,000.00 per annum.

17. Considering the financial condition of [APR] and considering that [APR's] officers were not being compensated for their services, the two offers of comprehensive compensation contracts made by [APR] were reasonable offers made in a good faith effort to reach an agreement with [Durette].

18. The failure to reach a mutually agreeable contract was a result of [Durette] terminating his employment with [APR] and terminating the negotiations between the parties and not a result of any act by [APR].

## CONCLUSIONS OF LAW

1. The implied contract upon which [Durette's] claim is based is the agreement between the parties to negotiate a comprehensive compensation contract to be arrived at by mutual agreement.

2. Said implied contract required that the parties negotiate in good faith.

3. The negotiation between the parties was conducted in good faith.

4. [APR] did not breach the implied contract between the parties.

5. There was no implied contract that [Durette] would receive additional compensation for work previously performed without the parties reaching agreement on a comprehensive compensation contract for future full-time employment.

6. Absent an implied contract to pay back wages, [Durette's] claim for back wages is a claim based upon unjust enrichment that has previously been ruled upon and denied by this Court.

7. [Durette] has no other legal basis upon which to recover damages from [APR].

## ORDER

Based on the foregoing [FOFs] and [COLs], it is hereby ordered, adjudged and decreed that Judgment be entered in favor of [APR] and against [Durette].

On March 21, 2000, Durette filed (1) a motion for reconsideration of the October 8, 1998 order granting APR's motion for summary judgment, (2) a motion for reconsideration of his September 1, 1999 oral trial motion to amend his complaint to include his unjust enrichment claim, and (3) a motion to enter additional findings of fact under HRCP Rule 52(b) and judgment under HRCP Rule 59 regarding his unjust enrichment and unpaid wages claims. Durette attached proposed FOFs and COLs regarding his unjust enrichment and unpaid wages claims to his motions for reconsideration. On April 3, 2000, APR filed a memorandum in opposition to Durette's March 21, 2000 motions for reconsideration. On April 7, 2000, Durette filed a reply memorandum in support of his motions for reconsideration.

On April 12, 2000, the circuit court conducted a hearing on Durette's March 21,

2000 motions for reconsideration and, after entertaining arguments from both parties, orally ruled as follows:

> THE COURT: ... The Court has reviewed the pleadings filed in connection with this matter.
>
> And having considered those pleadings, as well as the record in this matter, and the arguments of Counsel, the Court is going to deny [Durette's] motion for reconsideration in this matter.

On April 24, 2000, the circuit court entered a written order denying Durette's March 21, 2000 motions for reconsideration.

On the same date, the circuit court entered judgment in favor of APR and against Durette, but did not address Durette's claims against Doran, Haroun, and Reed. In that connection, Durette's first notice of appeal, filed on May 22, 2000, was dismissed as premature by order of this court dated September 22, 2000 because the April 24, 2000 judgment did not dispose of all of the claims in Durette's complaint. On October 4, 2000, the circuit court entered a first amended judgment, which addressed all of Durette's claims. On October 30, 2000, Durette timely filed his second notice of appeal.

## II. *STANDARD OF REVIEW*

■ We review the circuit court's grant or denial of summary judgment *de novo. Hawai'i Community Federal Credit Union v. Keka,* 94 Hawai'i 213, 221, 11 P.3d 1, 9 (2000). The standard for granting a motion for summary judgment is settled:

> [S]ummary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties. The evidence must be viewed in the light most favorable to the non-moving party. In other words, we

must view all of the evidence and the inferences drawn therefrom in the light most favorable to the party opposing the motion.

*Id.* (citations and internal quotation marks omitted).

*Simmons v. Puu,* 105 Hawai'i 112, 117–18, 94 P.3d 667, 672–73 (2004) (quoting *Kahale v. City and County of Honolulu,* 104 Hawai'i 341, 344, 90 P.3d 233, 236 (2004) (quoting *SCI Management Corp. v. Sims,* 101 Hawai'i 438, 445, 71 P.3d 389, 396 (2003) (quoting *Coon v. City and County of Honolulu,* 98 Hawai'i 233, 244–45, 47 P.3d 348, 359–60 (2002)))).

## III. *DISCUSSION*

### A. *HRAP Rule 28(b)(4)*

■ As a preliminary matter, we address APR's assertion that, "[b]ased on [Durette's] non-compliance with HRAP Rule 28(b)(4), [*see supra* note 4, Durette's] points of error should be disregarded." Durette urges in his reply brief that we should reject APR's assertion. On the record before us, we substantially agree with Durette.

As noted *supra* in note 4, HRAP Rule 28(b)(4) requires opening briefs to contain "[a] concise statement of the points of error set forth separately in numbered paragraphs." HRAP Rule 28(b)(4) further provides that each point of error must state the following: "(i) the alleged error committed by the court or agency; (ii) *where in the record the alleged error occurred;* and (iii) *where in the record the alleged error was objected to or the manner in which the alleged error was brought to the attention of the court or agency.*" (Emphases added.) Finally, HRAP Rule 28(b)(4) states four requirements specific only to points of error involving (1) "the admission or rejection of evidence," (2) "a jury instruction," (3) "a finding or conclusion of the [circuit] court[,]" and (4) "a ruling upon the report of a master[.]" HRAP Rules 28(b)(4)(A) through (D).

In the present matter, Durette's points of error satisfy HRAP Rule 28(b)(4)(i) by alleging (1) that "[t]he trial court erred as a matter of law when it granted [APR's] Motion for Summary Judgment as to [Durette's] Claim for Unjust Enrichment" and (2) that

"[t]he trial court erred when it [d]enied [Durette's motions for reconsideration]." It is also noteworthy that, due to the nature of Durette's points of error, the requirements of HRAP Rules 28(b)(4)(A) through (D) are inapposite to his opening brief. Moreover, Durette's points of error accurately indicate "where in the record the alleged error occurred[,]" HRAP Rule 28(b)(4)(ii), insofar as they expressly cite the page numbers of the record on appeal where the orders granting summary judgment, and denying Durette's motions for reconsideration are located. Although Durette's points of error do not state "where in the record the alleged error was objected to[,]" Durette nevertheless met the requirements of HRAP Rule 28(b)(4)(iii), at least with respect to his point of error regarding the entry of summary judgment as to his unjust enrichment claim, by setting forth "the manner in which the alleged error was brought to the attention of the [circuit] court[.]" By clear implication, Durette's citation of the order denying his motions for reconsideration highlighted the motion for reconsideration of the order granting summary judgment, which, by its very nature, brought the circuit court's alleged error to its attention.[8]

Based on the foregoing, Durette's point of error as to the order granting summary judgment does not violate the requirements of HRAP Rule 28(b)(4).

### B. *Motion For Summary Judgment*

■ As discussed above, Durette argues on appeal, *inter alia*, that "it was error as a matter of law for the circuit court to dismiss [his] unjust enrichment claim via summary judgment[.]" APR responds, *inter alia*, as follows: (1) "the trial court properly dismissed [Durette's] unjust enrichment claim because [Durette] received all that he was entitled to receive under the parties' existing agreement[,]" and (a) "there was no unjust

enrichment because [APR] did not receive any unjust benefits[,]" (b) "there was no implied contract since there was no mutual assent on essential terms[,]" (c) "[Durette] was paid the full amount that he was promised under the existing agreement[,]" and (d) "the trial court's ruling was supported by the [FOFs] and should not be overturned[ ]"; and (2) "the trial court's rulings should be affirmed." In his reply brief, Durette maintains, *inter alia*, (1) that "[t]he critical standard of review for this appeal is that the trial court erred as a matter of law when it granted APR's [m]otion for [s]ummary [j]udgment in regard to Durette's unjust enrichment claim" and (2) that the facts, viewed "in the light most favorable to Durette" and "[a]ppl[ied] ... to the law of unjust enrichment, [indicates that] the trial court erred as a matter of law when it granted APR's motion for summary judgment[.]" We agree with Durette.

■ Unjust enrichment, as a claim for relief, is not clearly defined in either the Hawai'i Revised Statutes or our jurisprudence. As far as we can tell, our best explanation of unjust enrichment has been as follows:

> It is a truism that *"[a] person confers a benefit upon another if he gives to the other possession of or some other interest in money, land, chattels, or cho[o]ses in action, ..., or in any way adds to the other's security or advantage."* Restatement of Restitution § 1 comment b (1937). *One who receives a benefit is of course enriched, and he would be unjustly enriched if its retention would be unjust.* Id. § 1 comment a. And it is axiomatic that *"[a] person who has been unjustly enriched at the expense of another is required to make restitution to the other." Id.* § 1. *We realize unjust enrichment is a broad and imprecise term defying definition.[*9*]*

<hr>

8. It is noteworthy that Durette's point of error as to the order denying his motions for reconsideration does not satisfy HRAP Rule 28(b)(4)(iii), inasmuch as the point of error states neither "where in the record the alleged error was objected to" nor "the manner in which the alleged error was brought to the attention of the court or agency." Durette's failure to comply with HRAP Rule 28(b)(4)(iii) does not affect our disposition

of the present matter, however, because, as we observed *supra*, our holding that the circuit court erred in granting summary judgment in favor of APR renders any analysis of Durette's remaining point of error unnecessary.

9. *Small* noted as follows:

*But in deciding whether there should be restitution here, we are guided by the underlying conception of restitution, the prevention of injustice.* See A. Denning, *The Changing Law* 65 (1953).[ [10] ]

*Small v. Badenhop,* 67 Haw. 626, 635–36, 701 P.2d 647, 654 (1985) (emphases added). Based on the foregoing, Durette's unjust enrichment claim can be stated as follows: Durette "confer[red] a benefit upon" APR by "add[ing] to [APR's] security or advantage" and the "retention [of that benefit by APR was] unjust." *Id.* at 635–36, 701 P.2d at 654. It is undisputed that Durette conferred a benefit on APR by adding to APR's advantage, inasmuch as the parties agree that Durette did provide services to APR. The dispositive question, therefore, is whether, in "view all of the evidence and the inferences drawn therefrom in the light most favorable to" Durette, there was a genuine issue of material fact as to whether the retention of the benefit of Durette's services by APR was "unjust." *Simmons,* 105 Hawai'i at 117–18, 94 P.3d at 672–73.

As we noted *supra* in section I, APR argued in its memorandum in support of its motion for summary judgment that "there has been no showing of injustice[,]" insofar as (1) Durette admitted during his deposition that APR "fully compensated [him] for all the services he provided [APR] and for [his] expenses" and (2) "[APR] did not post a profit while [Durette] was providing his consultant services in 1994–1996." Also as noted *supra* in section I, Durette "categorically disputed" APR's first argument in his September 16, 1998 affidavit attached to his memorandum in opposition, asserting, *inter alia,* that his deposition testimony "referr[ed] only to the expenses and the token monthly payments that [he] was paid[,] ... [and] did not include the additional undetermined amounts that [he] was still owed." Thus, notwithstanding the fragmentary statement contained in his deposition and the fact that Durette received the compensation owed to him by APR under their initial agreements, Durette clearly established a genuine issue of material fact as to whether he had received *just* compensation for his services.

■ As to APR's second argument, *i.e.,* that it was not unjustly enriched because APR "did not post a profit while [Durette] was providing his consultant services in 1994–1996," Durette responded in his memorandum in opposition that, by APR's logic, "any employer who does not make a profit does not have to pay its employees." We agree with Durette that APR's second argument, without more, constitutes insufficient grounds for summary judgment, inasmuch as the question whether APR "post[ed] a profit" during the period of Durette's employment is irrelevant to the question whether APR was unjustly enriched by Durette's services. Indeed, notwithstanding that APR did not profit, APR failed to establish the absence of a genuine issue of material fact as to whether Durette's services had saved it from incurring even greater losses, a benefit that may have been unjustly retained by APR if it had failed adequately to compensate Durette. The fact that APR was not a profitable en-

In the words of the author of a highly regarded treatise on restitution:
Unjust enrichment is an indefinable idea in the same way that justice is indefinable. But many of the meanings of justice are derived from a sense of injustice, and this is true of restitution since attention is centered on the prevention of injustice. Not all injustice but rather one special variety: the unjust enrichment of one person at the expense of another. This wide and imprecise idea has played a creative role in the development of an important branch of modern law.
1 G. Palmer, *The Law of Restitution* § 1.1 (1978) (footnote omitted).
67 Haw. at 636 n. 12, 701 P.2d at 654 n. 12.

**10.** The *Small* court further observed as follows: Lord Denning's statement reads:

Underlying all the law of restitution is the conception that no one should unjustly enrich himself at the expense of his neighbour. This conception is too indefinite to be stated as a principle of law: but it sufficiently indicates a new category. Just as the conception of contract is the enforcement of promises, and the conception of tort is damages for wrongdoing, so the conception of restitution is the prevention of unjust enrichment. Once this category comes to be accepted into the law, the courts will no longer find themselves forced to fit all remedies into the straitjackets of contract and tort, but will be able to develop a comprehensive category with its own distinct principles.
A. Denning, *The Changing Law* 65 (1953).
67 Haw. at 636 n. 13, 701 P.2d at 654 n. 13.

terprise during the relevant period, in itself, does not establish the absence of a genuine issue of material fact as to unjust enrichment.

Nevertheless, we note that APR maintains in its reply brief that Durette cannot claim unjust enrichment based on "reli[ance up]on [salary] proposals which he rejected." APR further argues that Durette cannot "state that there was an implied contract by which he is entitled to receive compensation" because he "rejected all proposals for compensation presented to him, thereby negating any attempt at agreeing to an employment contract." The foregoing contentions conflate Durette's unjust enrichment claim with his implied contract claim. As discussed *supra*, the elements of Durette's unjust enrichment claim are (1) that Durette "confer[red] a benefit upon" APR by "add[ing] to [APR's] security or advantage" and (2) that the "retention [of that benefit by APR was] unjust." *Small*, 67 Haw. at 635–36, 701 P.2d at 654. By contrast, our jurisprudence has defined a claim of implied contract as follows:

... "Implied contracts arise under circumstances which, according to the ordinary course of dealing and the common understanding of men, show a mutual intention to contract." [*Hertzog v. Hertzog*, 29 Pa. St. 465, 468 [(1857)]]. *"An implied contract, in the proper sense, is where the intention of the parties is not expressed, but an agreement in fact, creating an obligation, is implied or presumed from their acts, as in the case where a person performs services for another, who accepts the same, the services not being performed under such circumstances as to show that they were intended to be gratuitous, or where a person performs services for another on request."* 9 Cyc. 242.... ["]All true contracts grow out of the intentions of the parties to transactions and are dictated only by their mutual and accordant wills. When this intention is expressed we call the contract an express one, when it is not expressed it may be inferred, implied or presumed from circumstances as really existing and then the contract thus ascertained is called an implied one.

* * * The law ordinarily presumes or implies a contract whenever this is necessary to account for other relations found to have existed between the parties. * * * A party who relies upon a contract must prove its existence; and this he does not do by merely proving a set of circumstances that can be accounted for by another relation appearing or existing between the parties. * * * Every induction, inference, implication or presumption in reasoning of any kind is a radical conclusion derived from and demanded by certain data or ascertained circumstances. If such circumstances demand the conclusion of a contract to account for them a contract is proved; if not, not." *Hertzog v. Hertzog, supra. In general[,] there must be evidence that defendant requested plaintiff to render the services or assented to receiving their benefit under circumstances negativing any presumption that they would be gratuitous.* The evidence usually consists in, first, an express request pertaining to the services, or second, circumstances justifying the inference that plaintiff, in rendering the services expected to be paid, and defendants supposed or had reason to suppose and ought to have supposed that he was expecting pay, and still allowed him to go on in the service without doing anything to disabuse him of this expectation; or third, proof of benefit received, not on an agreement that it was gratuitous and followed by an express promise to pay." *Railway Company v. Gaffney*, 65 Oh. St. 104, 116, 61 N.E. 152.

*Wall v. Focke*, 21 Haw. 399, 404–05 (Haw. Terr.1913) (emphases added). Thus, although a claim for implied contract requires a plaintiff to present "evidence that [the] defendant *requested* plaintiff to render the services or *assented* to receiving their benefit under circumstances negativing any presumption that they would be gratuitous," *id.* (emphases added), a claim for unjust enrichment requires only that a plaintiff prove that he or she "confer[red] a benefit upon" the opposing party and that the "retention [of that benefit] would be unjust." *Small*, 67 Haw. at 635–36, 701 P.2d at 654. APR's arguments are therefore relevant only to Du-

rette's implied contract claim, not to his unjust enrichment claim, and APR has failed adequately to demonstrate the absence of a genuine issue of material fact as to the latter.

Inasmuch as, in "view all of the evidence and the inferences drawn therefrom in the light most favorable to" Durette, there was a genuine issue of material fact as to whether the retention of the benefit of Durette's service by APR was "unjust," we hold that the circuit court erred in granting summary judgment in favor of APR. *Simmons*, 105 Hawai'i at 117–18, 94 P.3d at 672–73,

## IV. *CONCLUSION*

In light of the foregoing analysis, we (1) vacate the circuit court's (a) October 8, 1998 order granting APR's motion for summary judgment and (b) October 4, 2000 first amended judgment and (2) remand this matter to the circuit court for further proceedings consistent with this opinion.

