# C. A. R. TRANSPORTATION BROKERAGE CO., INC. *v.*
## Michael W. SEAY and Cheryl Seay

06-1122                                                   255 S.W.3d 445

### Supreme Court of Arkansas
### Opinion delivered April 12, 2007

---

*Hirsch Law Firm, P.A.*, by: *E. Kent Hirsch*, for appellant/cross-appellee.

*Zurborg Law Office*, by: *J. David Zurborg*, for appellees/cross-appellants.

DONALD L. CORBIN, Justice. Appellant C.A.R. Transportation Brokerage Co., Inc., appeals the order of the Benton County Circuit Court entering judgment against Appellee Michael Seay. On appeal, C.A.R. Transportation argues that the court erred in finding that: (1) Appellee Cheryl Seay did not convert property belonging to it; and (2) an equitable lien did not attach from the time of its inchoate inception. Appellees Michael and Cheryl Seay cross-appeal, arguing that the trial court erred in finding that: (1) Michael converted property of C.A.R. Transportation; and (2) an equitable lien was warranted and should date back to the date of the trial of this matter. As this is a second or subsequent appeal, *see Seay v.*

*C.A.R. Transportation Brokerage Co., Inc.*, 366 Ark. 527, 237 S.W.3d 48 (2006) (*Seay I*), our jurisdiction is pursuant to Ark. Sup. Ct. R. 1-2(a)(7). We affirm on appeal as modified and affirm on cross-appeal.

The underlying facts of this action reveal that Regions Bank[1] filed a foreclosure action against the Seays for real property located at 507 Paige Boulevard, Lowell, Arkansas, and all equipment therein. On September 16, 2003, the circuit court entered an order granting summary judgment in favor of Regions on its foreclosure action. The order entered monetary judgments against the Seays as to Regions, and directed that should the judgments not be paid within ten days, an appointed commissioner would sell the real estate at a public auction, with the proceeds of the sale being applied first to the costs of the auction, and then the principal and interest of the judgments. The order further directed the Seays to deliver all equipment to Regions, which held a security interest on the property.

On October 29, 2003, the commissioner executed a commissioner's sale notice on the property, setting the sale for November 18, 2003, at 10:00 a.m. The notice described the property and further provided "Also: All equipment[.]" On November 18, 2003, the commissioner filed her report of the sale of the Paige Boulevard property to C.A.R. Transportation. The report described the property and further read "Also: All equipment[.]"

On November 20, 2003, the circuit court entered an order of confirmation. Later that day, the Seays filed a motion to set aside the judicial foreclosure sale. In it, they claimed that the court's order did not direct that the equipment be sold in concert with the real estate, and that by selling the two together, the commissioner's sale failed to conform with the court's order and was thus prejudicial to them. The Seays asked the court to set aside the sale.

On November 21, 2003, C.A.R. Transportation filed a motion for body attachment and show-cause order asserting that substantial equipment had been removed from the premises of Paige Boulevard, both of which C.A.R. Transportation had purchased at the sale. That same day, the circuit court entered an order directing the Seays to turn over to C.A.R. Transportation all

---

[1] Regions Bank was an appellee in the prior appeal of this matter, but is not a party to the instant appeal.

property, "including equipment listed on the Commissioner's Report of Sale." The order further directed the Seays "to preserve and not remove, sell, or move any of the aforesaid property," including any of the property that had been previously removed. Three days later, the circuit court ordered Michael Seay brought before the court to show cause.

On December 12, 2003, C.A.R. Transportation filed its amended response to the Seays' motion to set aside the foreclosure sale. It argued that the court's foreclosure decree speaks for itself and that the Seays' motion had been filed too late, because the sale had already been confirmed by the order of the court, and the Seays had already cashed their check from the sale. C.A.R. Transportation further asserted a counterclaim asserting that the Seays should be held in contempt for willful violation of the court's November 26, 2003 order.

On January 12, 2004, C.A.R. Transportation filed a motion for summary judgment, again alleging that the Seays' motion to set aside the judicial foreclosure was not timely filed and thus could not be considered on its merits. On January 27, 2004, C.A.R. Transportation filed its second amended response to the motion to set aside and asserted a counterclaim against the Seays for conversion.

On March 23, 2004, the circuit court entered an order granting C.A.R. Transportation's motion for summary judgment. The circuit court found that from the uncontested proof submitted by C.A.R. Transportation the judicial sale was properly noticed, C.A.R. Transportation was the successful bidder, the sale price was paid, an order of confirmation was entered, and Michael received a check for the excess proceeds of the sale. The circuit court further found that "no objection was made to the manner of the sale, the procedure of the sale, or any alleged irregularities of the sale prior to the entry of the Order of Confirmation." The court then ruled that the confirmation order was a final order, that C.A.R. Transportation was the owner of the real property sold at the foreclosure sale, and that the motion to set aside was not timely filed. The court reserved ruling on the issues of ownership of certain items of personal property that were in dispute. No notice of appeal was filed from this order.

On October 19, 2004, the circuit court issued a letter opinion in which it found for C.A.R. Transportation on its conversion claim against Michael Seay, in the amount of $481,625,

for conversion of equipment and fixtures. The court further found Michael in contempt for his failure to return certain items; however, the court held that Michael could purge himself of the contempt by returning the missing items or by paying their value within ten days of the order.

On February 15, 2005, the trial court entered a judgment against Michael Seay, together with findings of fact and conclusions of law. Judgment was awarded to C.A.R. Transportation against Michael Seay in the amount of $481,625, together with an equitable lien as of the date of trial on the proceeds of the judicial sale, an equitable lien on the inventory at the property, and absolute ownership of all equipment located at the Paige Boulevard property, as well as the real estate. The court further found Michael Seay in contempt of court and ordered a judicial lien on the inventory and items possessed by Michael, with the proceeds from a judicial sale to be transferred to C.A.R. Transportation.[2]

The Seays appealed the trial court's order to the Arkansas Court of Appeals, and C.A.R. Transportation cross-appealed. The case was certified to this court. In *Seay I*, 366 Ark. 527, 237 S.W.3d 48, this court dismissed with prejudice the Seays' appeal of the trial court's order granting summary judgment in favor of C.A.R. Transportation on the basis that their notice of appeal was not timely filed. With regard to the conversion claims raised by the Seays and C.A.R. Transportation, we determined that the trial court failed to issue a ruling with regard to the allegation that Cheryl had committed conversion. Because it was determined that the conversion claim was still pending, this court dismissed without prejudice the remainder of the appeal and cross-appeal. *Id.*

Following this court's dismissal of the appeal, the trial court issued an order on September 8, 2006, again finding that Michael had committed conversion, but also finding that there was no proof that Cheryl converted property belonging to C.A.R. Transportation. In this order, the trial court also determined that the proper date of attachment for the equitable lien was the date of trial. Following entry of the order, C.A.R. Transportation timely filed a notice of appeal, and the Seays timely filed a notice of cross-appeal. We now consider the issues on appeal.

---

[2] This order also reflected that upon motion by C.A.R. Transportation, all third-party defendants were dismissed from the action.

*I. Direct Appeal*

*a. Whether Cheryl converted equipment belonging to*
*C.A.R. Transportation*

For its first point on appeal, C.A.R. Transportation argues that the trial court erred in finding that Cheryl Seay did not convert property belonging to it. According to C.A.R. Transportation, Cheryl acted in concert with Michael in converting the equipment located at 507 Paige Boulevard. C.A.R. Transportation avers that even if Cheryl did not physically convert the equipment, she is still guilty of conversion as the testimony indicated that she was aware that a trailer parked at her house contained items that the court had ordered returned, and by failing to comply with that order, she committed conversion. Cheryl argues that the trial court correctly determined that she did not have any dealings with the items that were found to have been converted and formed the basis for the damages assessed by the trial court. In addition, she avers that because the trial court's order directed the Seays not to move anything, she could not have moved any property that she might have seen for fear of violating the court's order.

Findings of fact of a trial court sitting as a jury will not be reversed on appeal unless clearly against a preponderance of the evidence. *Graham Constr. Co. v. Earl*, 362 Ark. 220, 208 S.W.3d 106 (2005). Since the question of the preponderance of the evidence turns largely on the credibility of the witnesses, this court defers to the superior position of the trial court. *Id.*

Conversion is a common-law tort action for the wrongful possession or disposition of another's property. *Mack v. Sutter*, 366 Ark. 1, 233 S.W.3d 140 (2006); *Hatchell v. Wren*, 363 Ark. 107, 211 S.W.3d 516 (2005). In order to establish liability for the tort of conversion, a plaintiff must prove that the defendant wrongfully committed a distinct act of dominion over the property of another, which is a denial of or is inconsistent with the owner's rights. *Id.* If the defendant exercises control over the goods in exclusion or defiance of the owner's rights, it is a conversion, whether it is for defendant's own use or another's use. *Id.*

In the present case, Cheryl testified that the only items that she removed from 507 Paige Boulevard were a few trash cans, some cleaning supplies, and a curio cabinet. There was no evidence presented that Cheryl exercised any distinct act of dominion over any of the equipment found to have been converted by

Michael. In fact, there was limited evidence presented with regard to Cheryl's actions in moving items from the Paige Boulevard property. Other than Cheryl's testimony that she only moved a few personal items, her daughter, Laura Henry, testified that it was her father, Michael, who called her and asked her to help move some office furniture. Laura stated that her mother was at the Paige Boulevard property and that they put a "couple of things in my mom's vehicle. And most of the stuff went into a trailer." Laura also testified that she never saw anybody moving anything out, nor did she see any equipment being moved out of the shop. In addition, Clifford Riggins, President of C.A.R. Transportation, testified that he observed Michael, Cheryl, their children, and Mary and Gayle Robbins moving "stuff" from the office and shop and loading it into vehicles. Riggins further testified, however, that he observed these actions from a distance and could not tell exactly what they were hauling. As previously stated, this court gives due deference to the superior position of the trial judge to determine the credibility of witnesses and the weight to be accorded to their testimony. *Stewart v. Combs*, 368 Ark. 121, 243 S.W.3d 294 (2006); *Earl*, 362 Ark. 220, 208 S.W.3d 106. In light of our deferential standard, we cannot say that the trial court erred in finding that Cheryl did not commit the act of conversion where there was no evidence that she had any dealings with the converted items.

Before leaving this point, we note that we are unpersuaded by C.A.R. Transportation's argument that evidence demonstrating that Cheryl knew that a trailer parked at her house contained items that had been removed from the Paige Boulevard property proves that Cheryl committed conversion. Likewise, C.A.R. Transportation's argument that joint and several liability attaches to Cheryl for conversion is not well taken. There was simply insufficient evidence to support a finding that Cheryl was jointly and severally liable, where her testimony that she took only a few items of personal property from the Paige Boulevard property was uncontroverted.

### b. Attachment of equitable lien

As its second point on appeal, C.A.R. Transportation argues that the trial court correctly determined that it was entitled to an equitable lien on excess proceeds from the foreclosure sale that was held in trust by the Seays' counsel, but erred in finding that the lien

attached as of the date of the commencement of the trial in this matter. According to C.A.R. Transportation, the lien, which was inchoate as of the date that notice of it was filed, became choate upon entry of the judgment; thus, the lien relates back to the date of the second amended counterclaim of January 27, 2004, and should attach from that date. The Seays counter that the trial court erred in granting an equitable lien, as it was nothing more than an attempt by C.A.R. Transportation to obtain a prejudgment hold and attachment on property that belonged to them. The Seays point out that at the time C.A.R. Transportation filed its counterclaim seeking the equitable lien, it held no judgment against the Seays on its conversion claim, nor did it seek any judgment on the lien prior to trial. Alternatively, the Seays argue that if this court determines that the trial court properly granted the equitable lien, the date of attachment should be the date of the judgment entered in C.A.R. Transportation's favor. While we do not agree with the Seays' claim that the trial court erred in granting an equitable lien, we do agree that the date of attachment for that lien should coincide with the trial court's judgment entered on February 15, 2005.

An equitable lien is a right to have a demand satisfied from a particular fund or specific property. *First Nat'l Bank of DeWitt v. Cruthis*, 360 Ark. 528, 203 S.W.3d 88 (2005). There, we further elaborated that an equitable lien has been defined as a remedy that awards a nonpossessory interest in property to a party who has been prevented by fraud, accident, or mistake from securing that to which he was equitably entitled. *See id.*

The court of appeals thoroughly addressed the concept of an equitable lien and explained that:

> [A]n equitable lien can arise absent an express or implied agreement.
>
> > An equitable lien may arise independently of any express agreement; it may arise by implication from the conduct and dealings of the parties. As the rule is frequently stated, in the absence of an express contract, an equitable lien, based on those maxims which lie at the foundation of equity jurisprudence, may arise by implication out of general considerations of right and justice, where, as applied to the relations of the parties and the circumstances of their dealings, there is some obligation or duty to be enforced.

However, the tendency is to limit rather than extend the doctrine of constructive liens, and, in order that such a lien may be claimed, either the aid of a court of equity must be requisite to the owner so that he can be compelled to do equity or there must be some element of fraud in the matter as a ground of equitable relief. Such a lien will not be implied and enforced where the facts and circumstances present no grounds for equitable relief, and there is an adequate remedy at law.

*Mitchell v. Mitchell*, 28 Ark. App. 295, 302-03, 773 S.W.2d 853, 857 (1989) (quoting 53 C.J.S. *Liens* § 8, at 467-468 (1987) (footnotes omitted)).

■ Here, C.A.R. Transportation made its claim for an equitable lien on the Seays' foreclosure sale proceeds in its counterclaim filed January 27, 2004. The claim was made, however, in conjunction with its counterclaim for conversion. As noted above, an equitable lien is the *right* to have a demand satisfied from a particular fund. C.A.R. had no *right* to any judgment against the Seays until the circuit court found that Michael was liable for conversion. For that reason, the circuit court erred in imposing the equitable lien as of the date of trial, rather than as of the date of the judgment.

■ Before leaving this point, we note that the cases relied on by C.A.R. Transportation to support its argument that the lien became choate upon entry of judgment, but should relate back to the date of filing of the amended counterclaim, are inapposite. At issue in *Thorn v. Ingram*, 25 Ark. 52 (1867), was the applicability of an equitable lien in a land transaction. In both *Gray v. Bank of Hartford*, 137 Ark. 232, 208 S.W. 302 (1918) and *Harrison v. Trader*, 29 Ark. 85 (1874), clerks issued writs that were served by sheriffs. In contrast, C.A.R. Transportation sought an equitable lien in personal property not related to the conversion claim, and it never sought a pretrial order or a writ of service prior to the date of the attachment of the lien. Thus, because any interest that C.A.R. Transportation had in the lien attached once a judgment was entered in its favor against Michael Seay, the attachment begins upon entry of that judgment. Accordingly, we affirm the entry of the equitable lien but modify its date of attachment to February 15, 2005.

## II. Cross-appeal

### a. Whether Michael converted property belonging to C.A.R. Transportation

The Seays filed a cross-appeal arguing that the trial court erred in ruling in favor of C.A.R. Transportation on the conversion claim against Michael. The Seays argue that Regions never took possession of the equipment at issue, or made demand for it from the date of the foreclosure order on September 16, 2003. After the sale, they claim C.A.R. Transportation obtained two writs of assistance; however, it made no attempt to obtain any order of possession of the equipment to take it out of the Seays' possession for three days. They contend that the equipment in Michael's possession was returned in accordance with the circuit court's order on November 26, 2003. The Seays contend that until the November 21, 2003 possession order, Michael did not interfere with C.A.R. Transportation's rights to the property, in that it had made no effort to obtain the property from his possession, and that such inaction should be viewed and deemed as a consent to his possession. After that time, they claim he was prohibited from moving the property; thus, because he retained it, he did not interfere with C.A.R. Transportation's possession. At the very least, they maintain damages should be mitigated in the case as Michael promptly returned the property before the filing of the conversion counterclaim.

C.A.R. Transportation responds that even after the confirmation order and the Seays' motion to set aside, which recognized the sale, Michael continued to dismantle and remove the recently sold equipment and fixtures from the recently sold real estate. It further contends that there is no evidence, nor even an argument, that C.A.R. Transportation or Regions authorized the dismantling and removal of the equipment; thus, it was in no way permissive. It asserts that the Seays lost their possessory rights in the equipment on September 16, 2003, when the circuit court issued its order of possession concerning the equipment. It further maintains that contrary to the Seays' claim otherwise, Michael failed to return certain items to C.A.R. Transportation as referenced by the court's order of February 15, 2005, and thus there was no mitigation of damages.

As previously stated, this court has held that in order to establish conversion, a plaintiff must prove that the defendant wrongfully committed a distinct act of dominion over the property

of another, which is a denial of or is inconsistent with the owner's rights. *See Hatchell*, 363 Ark. 107, 211 S.W.3d 516. If the defendant exercises control over the goods in exclusion or defiance of the owner's rights, it is a conversion, whether it is for defendant's own use or another's use. *See id.* The proper measure of damages for conversion of property is the market value of the property at the time and place of the conversion. *See id.*

■ In the present case, C.A.R. Transportation was entitled to possession of the equipment at issue as of the date of sale, yet it was denied the property by Michael's actions. Notwithstanding the Seays' claim that Michael eventually returned the equipment, the circuit court clearly found that certain equipment was still outstanding and had not been returned. The property was clearly C.A.R. Transportation's property, and Michael clearly exercised dominion over it when he removed it from the property after the sale; thus, his actions constituted conversion. Moreover, he cannot claim that the court's order directing him not to move the property prohibited him from returning it. The property was C.A.R. Transportation's following the sale, and it was entitled to possession thereof. Accordingly, the circuit court did not err in finding for C.A.R. Transportation on its claim of conversion against Michael.

Appeal affirmed as modified; cross-appeal affirmed.