**Electronically Filed
Intermediate Court of Appeals
30527
09-MAY-2013
08:28 AM**

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

---o0o---


SCOTT E. SIMMONS, Plaintiff-Appellant,
v.
APRIL LEE SAMULEWICZ, Defendant-Appellee,
and DOES 1-50, Defendants.


NO. 30527


APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 08-1-0769)


MAY 9, 2013


FOLEY, PRESIDING JUDGE, REIFURTH and GINOZA, JJ.


OPINION OF THE COURT BY GINOZA, J.

Plaintiff-Appellant Scott E. Simmons (Simmons) appeals from the Final Judgment filed December 13, 2010 in the Circuit Court of the First Circuit[1] (circuit court). Judgment was entered in favor of Defendant-Appellee April Lee Samulewicz (Samulewicz), pursuant to the (1) "Order Granting [Samulewicz's] Motion for Summary Judgment" filed on April 28, 2010, and

---

[1] The Honorable Derrick H.M. Chan presided.

(2) "Order Granting [Samulewicz's] Motion for Award of Attorney's Fees and Costs" filed on December 13, 2010.

Simmons and Samulewicz were once involved in a romantic relationship, which resulted in their cohabitation and subsequent engagement. Following the dissolution of their relationship after almost seven years, Simmons brought this action against Samulewicz asserting, *inter alia*, that the parties had entered into a joint-venture and/or joint enterprise, including the purchase of real estate. Simmons's complaint asserted causes of action against Samulewicz for: breach of contract (Count I); breach of implied contract (Count II); promissory estoppel (Count III); quasi-estoppel (Count IV); constructive trust (Count V); unjust enrichment (Count VI); and civil conspiracy (Count VII).

In this appeal, Simmons asserts that the circuit court erred in granting summary judgment in favor of Samulewicz because: (1) the doctrines of *res judicata* and collateral estoppel do not apply; (2) the statute of frauds does not apply to partnership or joint venture agreements, and Simmons is not seeking enforcement of an agreement to transfer land; (3) Samulewicz waived any statute of frauds defense to the breach of promise to marry; (4) if the statute of frauds applies, Simmons's part performance takes all oral agreements out of the statute of frauds; (5) the parol evidence rule was not applicable to a quitclaim deed; (6) there are genuine issues of material fact as to whether or not the parties entered into an express or implied partnership agreement, and if so, whether Simmons has a right to damages; and (7) there are genuine issues of material fact as to Simmons's claims for constructive trust, fraud, estoppel, conspiracy and unjust enrichment. Simmons also contends on appeal that the circuit court erred by awarding excessive, unwarranted and improper attorneys' fees to Samulewicz.[2]

---

[2] Simmons does not challenge the award of costs by the circuit court.

For the reasons set forth below, we hold that (1) the circuit court properly granted summary judgment as to Simmons's express and implied contract claims; (2) the circuit court erred in granting summary judgment as to Simmons's unjust enrichment claim; (3) the circuit court erred in granting attorneys' fees; and (4) all other points of error are either waived or moot.

We therefore vacate the Final Judgment with regard to Simmons's claim for unjust enrichment and the award of attorneys' fees, and we remand the case to the circuit court for further proceedings.

I.   **Case Background**

A.   **Relevant Facts**

Simmons and Samulewicz began their romantic relationship in June 2000 and thereafter began cohabitating and planning their future together.  On or about October 2001, Simmons proposed marriage and the parties planned a wedding date in August 2002.

In the meantime, in May 2002, the parties purchased as joint tenants a residence located on Kuupua Street in Kailua (Kuupua Street Property), which also had a separate rental unit (cottage).  In a declaration supporting her summary judgment motion, Samulewicz contends that she was thinking of buying a house and when told by the bank that she would need a co-signor, Simmons indicated he was willing to co-sign for the loan. Simmons, on the other hand, contends in a counter-declaration that he co-signed because Samulewicz was to be his wife and the Kuupua Street Property was to be their marital home.  Simmons further asserts that Samulewicz provided the money for the down payment on the Kuupua Street Property, but that his credit history and income allowed them to secure the mortgage.  Simmons asserts that the parties agreed to share financial responsibility for the maintenance of the Kuupua Street Property, including, among other things, the mortgage, utilities, property taxes, and cost of improvements.  They also agreed, he contends, that they

3

would share any equity, income or other benefits from that property.

In August 2002, the parties participated in a "spiritual wedding ceremony," which involved traditional aspects of a wedding ceremony, but they did not sign a marriage license. Although Simmons and Samulewicz had originally planned on getting legally married, Samulewicz was concerned about Simmons's business and financial situation and the potential financial liability legal marriage could entail. The couple agreed to go through with the ceremony and, according to Simmons, secure the marriage license thereafter. However, a marriage license was never signed.

After the ceremony, Simmons contends that the couple held themselves out as husband and wife. They continued to live at the Kuupua Street Property.

Simmons further contends that, as Samulewicz was frequently away on business, they agreed that Simmons would manage and maintain the Kuupua Street Property including maintaining the landscape, painting, making repairs, adding new appliances, constructing fences, installing flooring, adding storage and closet space, renovating bathrooms, and replacing the cottage roof, along with other "handy-man" type responsibilities as needed to preserve and protect the Kuupua Street Property. Moreover, Simmons asserts it was his job to find renters for the cottage and to take care of Samulewicz's automobile.

In August 2004, Simmons transferred his interest in the Kuupua Street Property to Samulewicz. Simmons asserts this was done in furtherance of their relationship and to protect the Kuupua Street Property from potential creditors of his business. Samulewicz maintains that there was no agreement that she would hold the Kuupua Street Property for the benefit of Simmons or that he would have any interest in the Kuupua Street Property.

Simmons also contends that the Kuupua Street Property was refinanced and that proceeds from the refinancing were used,

among other things, to purchase another property in Kailua to be rented out (Rental Property) and to purchase property in Florida (Florida Property). Simmons claims that due to continued concerns about his potential business creditors, Samulewicz and he agreed that he would not be on title to either the Rental Property or the Florida Property, but instead title to those properties would be held by Samulewicz, her mother, and her step-father. He contends Samulewicz, her mother and her step-father agreed to create a trust consisting of the Kuupua Street Property, the Rental Property and the Florida Property, wherein he would be a trustee and beneficiary and share equally in the income, proceeds, disbursements, profits and assets of the trust. Samulewicz disputes that Simmons was involved in any way in the purchases of the Rental Property or the Florida Property. She also disputes that she agreed to set up a trust for Simmons or that Simmons would have any ownership interest in property that was in her name.

On or about June 2007, Samulewicz ended her relationship with Simmons. On August 15, 2007, Samulewicz filed an action in the District Court of the First Circuit (district court) to eject Simmons from the Kuupua Street Property. Two weeks later, on August 29, 2007, Simmons filed a Complaint for Division of Quasi-Marital Property against Samulewicz in the Family Court of the First Circuit (family court). On September 12, 2007, the district court ruled that Samulewicz was entitled to possession of the Kuupua Street Property and that Simmons was not entitled to remain on the property. On November 6, 2007, the family court granted Samulewicz's motion to dismiss the family court action due to lack of subject matter jurisdiction.

B.    **Proceedings in the Circuit Court**

On April 15, 2008, Simmons filed the complaint in this action in the circuit court. On October 21, 2009, Samulewicz filed a Motion for Summary Judgment arguing that there existed no

genuine issue of material fact and that she was entitled to judgment as a matter of law because Simmons had no rights to Samulewicz's property, and Simmons's claims were barred by *res judicata* or collateral estoppel, the statute of frauds, and the parole evidence rule.

On April 28, 2010, the circuit court issued an Order Granting Samulewicz's Motion for Summary Judgment. The Order simply stated, "[a]fter considering the submitted memoranda, exhibits, and representations made by counsel in the light most favorable to Plaintiff, and being duly advised of the record, files, and pleadings herein, the court finds there is no genuine issue of material fact as to any of Plaintiff's claims." Thus, the particular basis for the circuit court's ruling is unclear. On May 25, 2010, Simmons filed a Notice of Appeal.

On May 25, 2010, Samulewicz filed a Motion for Award of Attorney's Fees and Costs. On December 13, 2010, the circuit court issued an order granting the motion and awarding Samulewicz $29,800 in attorneys' fees and $1,025.56 in costs. On December 13, 2010, the circuit court entered Final Judgment in favor of Samulewicz.

On December 27, 2010, Simmons filed an Amended Notice of Appeal.

## II. Standards of Review

### A. Summary Judgment

> On appeal, the grant or denial of summary judgment is reviewed *de novo*. *See State ex rel. Anzai v. City and County of Honolulu*, 99 Hawai'i 508, [515], 57 P.3d 433, [440] (2002); *Bitney v. Honolulu Police Dep't*, 96 Hawai'i 243, 250, 30 P.3d 257, 264 (2001).
>
> > [S]ummary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties. The evidence must be viewed in the light most favorable to the non-moving party. In other

> words, we must view all of the evidence and inferences
> drawn therefrom in the light most favorable to the
> party opposing the motion.
>
> *Kahale v. City and County of Honolulu*, 104 Hawai'i 341, 344,
> 90 P.3d 233, 236 (2004) (citation omitted).

*Nuuanu Valley Ass'n v. City & Cnty. of Honolulu*, 119 Hawai'i 90, 96, 194 P.3d 531, 537 (2008).

**B.     Award of Attorneys' Fees**

"The circuit court's grant or denial of attorneys' fees and costs is reviewed under the abuse of discretion standard." *Kahala Royal Corp. v. Goodsill Anderson Quinn & Stifel*, 113 Hawai'i 251, 266, 151 P.3d 732, 747 (2007).

**III. Discussion**

As an initial matter, although Simmons's points of error challenge the grant of summary judgment on his causes of action for constructive trust, fraud, estoppel, and conspiracy, he presents no argument as to these claims.  Therefore, we deem Simmons's points of error regarding these claims waived.  Hawai'i Rules of Appellate Procedure Rule 28(b)(7) ("Points not argued may be deemed waived.").

Most of Simmons's remaining points of error are raised because it is unclear on what basis the circuit court granted summary judgment and Simmons thus attempts to address a variety of arguments raised in Samulewicz's summary judgment motion.  We address below only those issues we deem necessary to resolve this appeal.

**A.     *Res Judicata* and Collateral Estoppel**

A primary basis for Samulewicz's summary judgment motion was that *res judicata* and collateral estoppel barred the instant action due to the two prior lawsuits involving Samulewicz and Simmons, that is: the summary possession action brought by Samulewicz in district court to evict Simmons from the Kuupua Street Property; and the action brought by Simmons in the family court asserting breach of a promise to marry and requesting division of quasi-marital property.

Neither the district court summary possession action nor the family court action bar the instant lawsuit. The tests differ with respect to whether *res judicata* (claim preclusion) or collateral estoppel (issue preclusion) apply, but neither test is met in this case.

> [C]laim preclusion [or *res judicata*] prohibits a party from relitigating a previously adjudicated cause of action. Issue preclusion, or collateral estoppel, on the other hand, applies to a subsequent suit between the parties or their privies on a *different* cause of action and prevents the parties or their privies from relitigating *any issue* that was actually litigated and finally decided in the earlier action.

*Dorrance v. Lee*, 90 Hawai'i 143, 148, 976 P.2d 904, 909 (1999).

A party relying on claim preclusion has the "burden of establishing that (1) there was a final judgment on the merits, (2) both parties are the same or in privity with the parties in the original suit, and (3) the claim decided in the original suit is identical with the one presented in the action in question." *Bremer v. Weeks*, 104 Hawai'i 43, 54, 85 P.3d 150, 161 (2004). On the other hand,

> the doctrine of collateral estoppel [or issue preclusion] bars relitigation of an issue where: (1) the issue decided in the prior adjudication is identical to the one presented in the action in question; (2) there is a final judgment on the merits; (3) the issue decided in the prior adjudication was essential to the final judgment; and (4) the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior adjudication[.]

*Dorrance*, 90 Hawai'i at 149, 976 P.2d at 910.

Here, the summary possession action did not decide the identical claims or the identical issues presented in this case. Rather, in the summary possession action, the issue was entitlement to possession of the Kuupua Street Property, not damages as in this case. Moreover, although Simmons generally asserted a legal and equitable claim to the Kuupua Street Property as a defense in the summary possession action (in part because he had filed the action in family court), such defense claims in the district court were not identical to the affirmative claims or issues he raises in this lawsuit seeking

monetary damages and such claims or issues were not decided by the district court. Samulewicz has failed to meet her burden of establishing that the requirements for claim preclusion or issue preclusion have been met.

Likewise, the family court action filed by Simmons does not preclude the claims or issues raised in this lawsuit. Although some of the claims asserted in Simmons's Complaint for Division of Quasi-Marital Property in family court are the same as those asserted in this action, the family court determined that it lacked subject matter jurisdiction because the parties did not obtain a marriage license. Given that the family court dismissed Simmons's complaint for lack of subject matter jurisdiction, there was no final judgment on the merits in the family court action. *See Bush v. Watson*, 81 Hawai'i 474, 480, 918 P.2d 1130, 1136 (1996) (holding that dismissal of claims for lack of subject matter jurisdiction was not an adjudication on the merits for purposes of barring claims).

Thus, claim preclusion and issue preclusion do not bar Simmons's claims or the issues raised in this lawsuit.

B.  **No Express or Implied Partnership Agreement**

In his appellate briefs, Simmons couches his breach of express and implied contract claims as asserting a partnership agreement between himself and Samulewicz. To the contrary, although Simmons's complaint alleges that the parties entered into a joint venture and/or joint enterprise, including the purchase of real estate, his contract claims are based on alleged breaches related to the promised trust; that is, that Samulewicz failed to create the promised trust, to name Simmons as a trustee and/or beneficiary of the trust, and to share equally the trust's income, proceeds, disbursements, profits and/or assets. On appeal, Simmons does not raise any point of error or argue that his contract claims are based on an alleged agreement to create a trust, and therefore, we address the question whether the contract claims can go forward based on an alleged partnership

agreement, as addressed by both parties in the briefing on appeal.

As noted by Simmons, Hawaii Revised Statutes (HRS) § 425-101 (2004 Repl.) defines a partnership as "an association of two or more persons to carry on as co-owners a business for profit[.]" The Hawai'i Supreme Court has stated that a partnership "exists where the parties have contracted to share, as common owners or principals, the profits of a business and . . . whether an agreement creates a partnership or not depends upon the intention of the parties." *Dang v. F and S Land Dev. Corp.*, 62 Haw. 583, 589, 618 P.2d 276, 280 (1980) (quoting *Barnes v. Collins*, 16 Haw. 340, 342 (1904)); *see also Winkelbach v. Honolulu Amusement Co.*, 20 Haw. 498, 502 (Haw. Terr. 1911). Based on the evidence adduced in regard to the summary judgment motion, there is no genuine issue of material fact that the parties did not enter into a partnership agreement.

With regard to whether there was a partnership between Samulewicz and Simmons, Samulewicz attested in her declaration that when Simmons signed the quitclaim deed in August 2004 transferring his interest in the Kuupua Street Property to her, "[t]here was no agreement that I would be holding the property for his benefit or that he would have any equitable or other interest in the property." Samulewicz further attested that

> 7.    In December, 2004 and January, 2005, my parents and I bought other property in Hawaii and in Florida. Mr. Simmons was not involved in this in any way. There was no discussion that he had any ownership in the property.
>
> . . .
>
> 14.    There was never any agreement that Mr. Simmons and I would form a partnership, a joint-venture, a joint-enterprise, or any "enterprise." To the best of my recollection, neither of us ever used the word "enterprise" in our discussions. As my boyfriend living in the Kuupua Street property, he did pay certain bills and do various things for me, and I did various things for him. However, this was not a part of any arrangement that he would have any ownership interest or any rights against me.

In response, Simmons's declaration fails to establish any genuine issue of material fact that he and Samulewicz had an agreement to "carry on as co-owners a business for profit." Rather, Simmons attributes his actions to his romantic relationship with Samulewicz rather than to a business for profit. Simmons's declaration states in relevant part:

2. On or about November 2000, I began a romantic relationship with Defendant April Lee Samulewicz ("Defendant"). We agreed to move in together and cohabitate. We arranged our lives together, and were known publically and among our friends and family as a couple. We cared for each other and where [sic] involved with each other's intimate personal and financial affairs.

3. Over the course of time, I came to rely on Defendant, loved her, trusted her and wanted to spend my life with her. On or about October 2001, I proposed marriage to her and she accepted.

4. We planned our wedding for August 2002.

5. Until then, <u>we continued living together as a couple, and continued making decisions in support of our relationship and future together as husband and wife. This included making financial plans and arrangement[s], and the decision to purchase our marital home</u>.

6. In the meantime, Defendant seemed to prosper in her career as an executive with BearingPoint Consultants. Her work required her to travel frequently and for extended periods. Her work and travel took her all over the world.

7. I was very supportive of her work, and endured her lengthy trips because I was committed to our relationship and a prosperous future together.

8. Towards that end, on or about May 2002, we purchased the real property located at 169 Kuupua Street, Kailua, Hawaii 96734 (the "Property"), which included a main house and a separate rental unit. The deed to the Property reflected Defendant and me as joint-tenants ("Deed").

. . .

11. I did not co-sign the Mortgage as a favor or courtesy to Defendant. <u>Rather, I co-signed because she was to be my wife and this was to be our marital home, and the start of a promising and prosperous life together</u>.

. . .

11

14.   Defendant and I agreed that we would share financial responsibility for the maintenance of the Property, including paying for the Mortgage, utilities, property taxes, and the cost of any improvements, among other expenses. We also agreed that we would share any equity, income, or benefits derived from the Property.

. . .

23.   On or about August 2004, Defendant and I agreed to transfer my title in the Property to Defendant ("Deed Transfer"). We did this in furtherance of our relationship and as a maneuver that we believed was prudent to protect the Property.

. . .

29.   Prior to the Deed Transfer, it was never our intent – it was certainly never my intent – to simply forfeit my financial interest in the Property. The Deed Transfer was solely a maneuver to protect our assets and to stay on a path were [sic] our relationship would prosper relationally and financially. I relied on Defendant's promises, but she did not and has not followed through.

(Emphases added.)

Similarly, in a second supplemental declaration, Simmons attested:

3.   On or about 2002, I cosigned mortgages, along with Defendant April Lee Samulewicz ("Defendant"), for the purchase of the real property and improvements located at 169 Kuupua Street, Kailua, Hawaii ("Kuupua House"). The principal mortgage was approximately $450,0000.00 [sic] and the second mortgage was approximately $140,000.00.

4.   I did not cosign the mortgage merely as a "favor" to Defendant, and at the time we executed the mortgages and deed, I definitely had a financial, relational and familial interest in the Kuupua House. That was my intent all along, and Defendant knew that, and is the reason why I executed those documents and exposed myself to the significant financial and legal obligations that came with them.

5.   The use of refinance proceeds from the Kuupua House was to benefit my relationship with Defendant to improve our financial and material well-being as a couple and family. These proceeds were not to be used to enrich Defendant at my expense.

(Emphases added.)

The purported intent set out in Simmons's declaration to promote a romantic and/or anticipated marital relationship, although including financial decisions, does not constitute an

intent to create a partnership. "There are no specific indices of partnership, although an agreement to share in the profits and losses *of a business* is weighty evidence thereof." *Buffandeau v. Shin*, 60 Haw. 280, 281, 587 P.2d 1236, 1237 (1978) (emphasis added). There is no evidence that there was an agreement between Simmons and Samulewicz to share in the profits and losses *of a business*. Thus, the circuit court did not err when it dismissed Simmons's express contract claim via summary judgment.

Likewise, summary judgment on the implied contract claim was also correct. Simmons claims that there is a genuine issue of material fact as to whether or not an implied contract existed based on the circumstances of his relationship with Samulewicz. This contention is without merit. "'Implied contracts arise under circumstances which, according to the ordinary course of dealing and the common understanding of men, show a mutual intention to contract.'" *Durette v. Aloha Plastic Recycling, Inc.*, 105 Hawai'i 490, 504, 100 P.3d 60, 74 (2004) (quoting *Wall v. Focke*, 21 Haw. 399, 404 (Haw. Terr. 1913)). Just as there is no evidence in the record that the couple expressly agreed to enter into a partnership, the evidence adduced before the circuit court does not give rise to an inference of an implied contract to share in the profits of a business. *See also Aehegma v. Aehegma*, 8 Haw. App. 215, 223, 797 P.2d 74, 79 (1990) ("Cohabitation, no matter for how long, does not by itself prove the existence of a contract implied-in-fact.").

Therefore, the circuit court properly ruled that Samulewicz was entitled to summary judgment on the implied contract claim.

Because there is no genuine issue of material fact as to whether an express or implied contract existed between Simmons and Samulewicz, we need not address Simmons's points of error related to the statute of frauds or the parol evidence rule.

C.   **The Circuit Court Erred in Granting Summary Judgment on the Unjust Enrichment Claim**

Simmons asserts that he provided evidence raising a genuine issue of material fact as to whether Samulewicz has been unjustly enriched.  Simmons argues that he conferred a benefit on Samulewicz and added to her advantage through expenses he incurred and through services he rendered related to their financial partnership to purchase, maintain, and share profits from real estate.  In opposing the summary judgment motion, Simmons adduced evidence showing, *inter alia*, that he had paid over $46,000 in mortgage payments for the Kuupua Street Property, that he had spent tens of thousands of dollars related to the Kuupua Street Property and for the benefit of the parties' relationship, and that he had incurred significant sums related to the Rental Property.

In response, Samulewicz argues:

> [Simmons] did favors for his lover just as she did favors for him.  He fixed up things around the house, made some improvements, rented out the cottage, dealt with the landscaper who was taking care of the yard, paid some of the bills for the properties, and bought a lot of the food.  So what?  This does not make an unjust enrichment claim.  Otherwise, every couple that lives together will end up in court seeking restitution.

Samulewicz does not dispute that she received benefits from Simmons.  What is contested is whether the retention of the benefits conferred by Simmons upon Samulewicz is unjust given the nature of their relationship and the circumstances of this case.

The Hawai'i Supreme Court has recognized that "unjust enrichment" is a "broad and imprecise term defying definition." *Small v. Badenhop*, 67 Haw. 626, 636, 701 P.2d 647, 654 (1985).

> Unjust enrichment is an indefinable idea in the same way that justice is indefinable.  But many of the meanings of justice are derived from a sense of injustice, and this is true of restitution since attention is centered on the prevention of injustice.  Not all injustice but rather one special variety: the unjust enrichment of one person at the expense of another.

*Id.* at n.12 (quoting 1 G. Palmer, *The Law of Restitution* § 1.1 (1978)). The supreme court looked to the Restatement of Restitution and adopted the truism that

> a person confers a benefit upon another if he gives to the other possession of or some other interest in money, land, chattels, or [choses] in action, . . ., or in any way adds to the other's security or advantage. One who receives a benefit is of course enriched, and he would be unjustly enriched if its retention would be unjust.

*Durette*, 105 Hawai'i at 502, 100 P.3d at 72 (quoting *Small*, 67 Haw. at 635-36, 701 P.2d at 654) (citation, emphases, quotation marks and brackets omitted)).

Hawai'i case law has primarily addressed what constitutes unjust enrichment in the context of a business relationship. *See Durette*, 105 Hawai'i 490, 505, 100 P.3d 60, 75 (holding that a genuine issue of material fact existed as to whether the retention of the benefits of an employee's services by the employer was unjust); *Small*, 67 Haw. 626, 701 P.2d 647 (remanding case to circuit court to fashion an equitable remedy for unjust enrichment claim against landowners, where landowners had obtained property for nominal consideration and were able to purchase another property for less than its actual value based on promises between the parties to jointly develop the properties); *Porter v. Hu*, 116 Hawai'i 42, 55-56, 169 P.3d 994, 1007-08 (App. 2007) (holding that a tort claim did not preclude agents from also bringing an unjust enrichment claim for the deprivation of the agents' books of business).

In this case, given that the parties were engaged, that they resided together for a number of years at the Kuupua Street Property, and that Simmons adduced evidence that they held themselves out as husband and wife after their spiritual ceremony, we must also consider the ruling in *Holstein v. Benedict*, 22 Haw. 441 (Haw. Terr. 1915). In *Holstein*, the plaintiff brought an action in assumpsit seeking recovery for the support furnished and the services rendered to the grand-aunt of the plaintiff's wife during the time that the grand-aunt had

moved into the plaintiff's home.  In deciding the case, the Hawai'i Supreme Court expressed the following principles:

> Ordinarily where services are rendered and voluntarily accepted, the law will imply a promise on the part of the recipient to pay for them; but where the services are rendered to each other by members of a family living as one household, there will be no such implication from the mere rendition and acceptance of the services. On the contrary, the presumption is that the services are intended to be gratuitous. [A]nd in order to recover therefor the plaintiff must affirmatively show either that an express contract for remuneration existed or that the circumstances under which the services were rendered were such as exhibit a reasonable and proper expectation that there would be compensation. The reason for this is that the household family relationship is presumed to abound in reciprocal acts of kindness and good will which tend to mutual comfort and convenience of the family; and the rule stated applies not only to members of a family who are related by blood, but to those distantly related, and to those who are in fact not related at all, provided they live together as members of one family. The presumption that services rendered by one member of a family to another were gratuitous is not a conclusive one. It may be overcome by showing an express agreement for payment, or by showing circumstances which will support the implication that the services were to be paid for. The burden is, of course, on the person rendering the services to overcome the presumption which the law raises that such services were rendered gratuitously.

22 Haw. at 443-44 (emphases added) (quoting 15 A. & E. Enc. Law, 1083, et seq.).

Although not legally related, Simmons and Samulewicz lived together as members of a family household; therefore, *Holstein* is applicable.  In light of the principles espoused in *Holstein*, we hold that certain portions of Simmons's unjust enrichment claim are precluded because he seeks compensation for services provided to a household member which are presumed under the law to be gratuitous, and Simmons has not presented evidence to create a genuine issue of material fact that there was an express contract for remuneration or a reasonable expectation of compensation.

In particular, Simmons is precluded from seeking compensation for any services he rendered to Samulewicz related to maintaining their household and which "tend to [the] mutual comfort and convenience of the family[.]"  22 Haw. at 444.  For

16

instance, Simmons's claim of compensation for maintaining Samulewicz's automobile, or for purchasing food items or home supplies, would be precluded. Likewise, any expenses for services rendered by Simmons in maintaining the Kuupua Street Property would be presumed to be gratuitous under *Holstein* because that property was the parties' household residence and they each shared in the comfort of residing there. Maintenance expenses would include, for instance, Simmons's claims for repayment of costs incurred in the renovation and upkeep of the Kuupua Street Property, including the cottage.

We conclude, however, that Simmons is not precluded from seeking compensation for the mortgage payments he made on the Kuupua Street Property, where Samulewicz now claims full title and ownership of the property. We deem such payments beyond the scope of "services" for the "mutual comfort and convenience of the family" contemplated in *Holstein*. Moreover, because Samulewicz claims full ownership of the property, there is a genuine issue of material fact whether it would be unjust for her to retain the benefit of those mortgage payments. Thus Simmons may pursue the mortgage payments as part of his unjust enrichment claim.

Furthermore, *Holstein* does not preclude Simmons's unjust enrichment claim for expenses he incurred and services he rendered related to the Rental Property, which is owned by Samulewicz, her mother, and her step-father. We do not view the Rental Property as a part of the parties' household, nor such services or expenses as being contemplated as gratuitous under *Holstein*.

Other jurisdictions have held that unjust enrichment claims can properly arise between parties in a romantic relationship. *See Cobren v. Anderson*, 385 S.W.3d 319 (Ark. Ct. App. 2011) (unjust enrichment claim was proper alternative basis for judgment in favor of appellee against her former boyfriend for the many loans she made him over the course of their

relationship); *Maglica v. Maglica*, 78 Cal. Rptr. 2d 101 (Cal. App. Dep't Super. Ct. 1998) (quantum meruit recovery allowed to former girlfriend for the reasonable value of the services she rendered to former boyfriend's company, provided such services were of direct benefit to the boyfriend).

The evidence proffered by Simmons establishes that there is a genuine issue of material fact as to whether Samulewicz has been unjustly enriched. Hence, the circuit court erred in granting summary judgment for Samulewicz on the claim for unjust enrichment.

**D. Circuit Court Erred in Granting Attorneys' Fees**

The circuit court awarded $29,800 in attorneys' fees to Samulewicz. The basis for the award is not specified in the circuit court's order, however Samulewicz brought her motion for fees pursuant to HRS § 607-14 (Supp. 2012), claiming that this was an action in assumpsit and asserting that she was the prevailing party.

"Assumpsit embraces quasi-contractual remedies such as unjust enrichment[.]" *Porter*, 116 Hawai'i at 59, 169 P.3d at 1011. Therefore, because we vacate the circuit court's grant of summary judgment as to Simmons's claim for unjust enrichment, it remains unclear which party will prevail on the assumpsit claims. *See Kamaka v. Goodsill Anderson Quinn & Stifel*, 117 Hawai'i 92, 126, 176 P.3d 91, 125 (2008) ("Although a plaintiff may not sustain his entire claim, *if judgment is rendered for him, he is the prevailing party for purposes of costs and attorneys' fees[.]*" (quoting *MFD Partners v. Murphy*, 9 Haw. App. 509, 514, 850 P.2d 713, 716 (1992) (internal quotation mark omitted; some brackets omitted, some added))). The award of attorneys' fees pursuant to HRS § 607-14 is thus vacated.

Upon a determination of Simmons's unjust enrichment claim, it will be within the discretion of the circuit court to determine whether attorneys' fees, if any, should be awarded at that time.

## IV.   Conclusion

For the reasons discussed above, the Final Judgment entered by the Circuit Court of the First Circuit on December 13, 2010 is vacated to the extent it enters judgment in favor of Samulewicz on Simmons's claim for unjust enrichment and to the extent that it awards attorneys' fees.  The Final Judgment is affirmed in all other respects.  This case is remanded to the circuit court for further proceedings consistent with this opinion.

On the briefs:

Peter Van Name Esser
for Plaintiff-Appellant

Michael Jay Green
John Rapp
for Defendant-Appellee